**Exhibit 1**

**Proposed Order**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Case No. 24-10279 (JKS) |
| PIONEER HEALTH SYSTEMS LLC, *et al.*,[1] | Chapter 11 (Subchapter V) |
| Debtors. | (Jointly Administered) |

**ORDER APPROVING STIPULATION FOR (I) ALLOWANCE OF CLAIMS OF MSC HOLDING, LLC D/B/A SYNDEOCARE AND MEDPORT BILLING, LLC, (II) WITHDRAWAL OF OBJECTION TO PLAN CONFIRMATION, (III) WITHDRAWAL OF MOTION TO REMOVE DEBTORS AS DEBTORS IN POSSESSION AND TO APPOINT SUBCHAPTER V TRUSTEE AS OPERATING TRUSTEE PURSUANT TO 11 U.S.C. § 1189(a); AND (IV) TO CHANGE VOTE REJECTING THE PLAN TO ONE ACCEPTING THE PLAN**

Upon consideration of the stipulation attached hereto as **Exhibit A** (the "Stipulation") by and between debtors and debtors-in-possession in the above-captioned chapter 11 cases (collectively, the "Debtors") and MSC Holding, LLC d/b/a Syndeocare ("MSC") and Medport Billing, LLC ("Medport," and together with MSC, "Creditors"); the Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated February 29, 2012; the Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b) and the Court may enter a final order consistent with Article III of the United States Constitution; the Court having found that venue of this proceeding and this Objection in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and good and sufficient cause appearing therefore;

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of their respective tax identification numbers, are as follows: Pioneer Health Systems LLC (4107), DOC LLC (0729), DOCTX3 PLLC (2604), PAS Services PLLC (8928), and DOC Corporate Group LLC (0970). The address of the Debtors' corporate headquarters is 3300 Dallas Pkwy, Suite 200, Plano, TX 75093.

**IT IS HEREBY ORDERED THAT:**

1.       The Stipulation (attached hereto as **Exhibit A**) is approved.

2.       MSC shall have an allowed Class 4 General Unsecured Claim totaling $1,133,254.45 (consisting of $919,407.82 from proof of claim number 10047; $161,480.44 from scheduled claim number 281001830, and $52,366.19 from scheduled claim number 281001840) (the "MSC Allowed Claim"). Medport shall have an allowed Class 4 General Unsecured Claim of $15,595.01 from proof of claim number 10049 (the "Medport Allowed Claim," and together with the MSC Allowed Claim, the "Allowed Claims").  The Allowed Claims shall not be subject to amendment by the Creditors or offset by the Debtors.  The Allowed Claims will be paid as Class 4 claims under the Plan.

3.       Pursuant to Federal Rule of Bankruptcy Procedure 3018(a), Creditors' vote rejecting the Plan shall be changed to one accepting the Plan.

4.       To the extent it has not yet been withdrawn, the *Objection of Medport Billing, LLC and MSC Holding, LLC d/b/a Syndeocare to Amended Subchapter V Plan of Reorganization* (the "Confirmation Objection") [Docket No. 218] shall be considered withdrawn.

5.       To the extent it has not yet been withdrawn, the *Medport Billing, LLC and MSC Holding, LLC d/b/a Syndeocare's Motion to Remove Debtor as Debtor in Possession and to Appoint Subchapter V Trustee as Operating Trustee Pursuant to 11 U.S.C. § 1185(a)* [Docket No. 242] (the "Removal Motion") shall be considered withdrawn.

6.      The terms and conditions of this Order shall be immediately enforceable and effective upon its entry.

7.      The Court retains jurisdiction over any and all issues arising from or related to the implementation or interpretation of this Order.

**<u>Exhibit A</u>**

**Stipulation**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Case No. 24-10279 (JKS) |
| PIONEER HEALTH SYSTEMS LLC, *et al.*,[1] | Chapter 11 (Subchapter V) |
| Debtors. | (Jointly Administered) |
| | **Related Docket Nos.  218, 242** |

**STIPULATION FOR (I) ALLOWANCE OF CLAIMS OF
MSC HOLDING, LLC D/B/A SYNDEOCARE AND MEDPORT BILLING, LLC,
(II) WITHDRAWAL OF OBJECTION TO PLAN CONFIRMATION, (III)
WITHDRAWAL OF MOTION TO REMOVE DEBTORS AS DEBTORS IN
POSSESSION AND TO APPOINT SUBCHAPTER V TRUSTEE AS OPERATING
TRUSTEE PURSUANT TO 11 U.S.C. § 1189(a); AND (IV) TO CHANGE VOTE
REJECTING THE PLAN TO ONE ACCEPTING THE PLAN**

THIS STIPULATION is entered into by and between the debtors and debtors in possession in the above-captioned cases (the "Debtors"), MSC Holding, LLC d/b/a Syndeocare ("MSC") and Medport Billing, LLC ("Medport," and together with MSC, "Creditors") with reference to the following facts:

**RECITALS**

A.    On or about March 14, 2018, Syndeocare LLC, MSC's predecessor, and PAS Services PLLC ("PAS"), entered into that certain Syndeocare Receivables Factoring Master Agreement (the "MSC Agreement"). On or about June 11, 2016, Syndeocare and PAS Services, LLC entered into an additional Syndeocare Receivables Factoring Master Agreements (together with the MSC Agreement, the "MSC Purchase Agreements").

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of their respective tax identification numbers, are as follows: Pioneer Health Systems LLC (4107), DOC LLC (0729), DOCTX3 PLLC (2604), PAS Services PLLC (8928), and DOC Corporate Group LLC (0970). The address of the Debtors' corporate headquarters is 3300 Dallas Pkwy, Suite 200, Plano, TX 75093.

B.      In or about August 2019, Syndeocare LLC merged with MSC. As a result, all of Syndeocare's rights, duties, and liabilities pursuant to the MSC Purchase Agreements were assigned to MSC.

C.      On or about August 11, 2021, Medport, entered into that certain Master Purchase Agreement (the "Medport Purchase Agreement," and together with the MSC Purchase Agreements, the "Purchase Agreements") with PAS whereby Medport purchased and PAS sold to Medport all of PAS's right, title, and interest in and to certain of PAS's accounts receivable.

D.      Disputes arose between the parties concerning their mutual obligations under the MSC Purchase Agreements and MSC initiated litigation against Debtors PAS, DOC LLC d/b/a Direct Orthopedic Care, and Pioneer Health Systems LLC in Nevada state court (the "State-Court Action").

E.      The Debtors commenced these cases (the "Bankruptcy Cases") by filing voluntary Chapter 11 petitions on February 21, 2024 (the "Petition Date").  Each Debtor elected to proceed under Subchapter V of Chapter 11 of the Bankruptcy Code pursuant to the Small Business Reorganization Act of 2019 (Public Law 116-54), as amended.  On February 22, 2024, Mr. David M. Klauder was appointed as the Subchapter V Trustee (the "Subchapter V Trustee"). No other trustee, examiner, or official committee has been appointed in these cases. The Debtors are operating their business as debtors in possession pursuant to section 1182(2) of the Bankruptcy Code.

F.      On May 21, 2024, the Debtors proposed their *Subchapter V Plan of Reorganization* (as it may be amended or supplemented, the "First Plan") [Docket No. 181] which they amended on May 31, 2024, to address various comments they received. The Debtors *Amended Subchapter*

*V Plan of Reorganization* (the "First Amended Plan") [Docket No. 185] was distributed to creditors for solicitation.

G.     On June 28, 2024, Creditors filed the *Objection of Medport Billing, LLC and MSC Holding, LLC d/b/a Syndeocare to Amended Subchapter V Plan of Reorganization* (the "Confirmation Objection") [Docket No. 218] whereby Creditors objected to confirmation of the Plan.

H.     After consultation with the U.S. Trustee and the Subchapter V Trustee, the Debtors filed their *Second Amended Subchapter V Plan of Reorganization* (the "Second Amended Plan") [Docket No. 230] on July 5, 2024. The Second Amended Plan included a new **Exhibit I**, setting forth proposed sale procedures (the "Sale Procedures") for a post-confirmation sale process.

I.     On July 16, 2024, Creditors filed *Medport Billing, LLC and MSC Holding, LLC d/b/a Syndeocare's Motion to Remove Debtor as Debtor in Possession and to Appoint Subchapter V Trustee as Operating Trustee Pursuant to 11 U.S.C. § 1185(a)* [Docket No. 242] (the "Removal Motion").

J.     The Debtors; David Hassinger, the lender (the "DIP Lender") under the debtor in possession financing facility approved by the Court by final order entered on March 28, 2024 (the "Final DIP Order") [Docket No. 100]; and Andrew R. Vara, the United States Trustee for Regions 3 and 9 (the "U.S. Trustee") each opposed the Removal Motion.

K.     Pursuant to this Stipulation, Creditors and the Debtors (collectively, the "Parties"), after having: (i) engaged in arm's length, comprehensive negotiations, and (ii) exchanged several offers and counteroffers, have agreed, on the terms set forth herein, to resolve their disputes through allowance of Creditors' claims, Creditors' support for a plan of reorganization that incorporates revisions to the Sale Procedures (including changing their rejection of the Plan to an

3

acceptance pursuant to Federal Rule of Bankruptcy Procedure 3018(a)), withdrawal of the Confirmation Objection and the Removal Motion, and mutual releases.

## **STIPULATION**

NOW, THEREFORE, Debtors and Creditors hereby stipulate and agree as follows:

1.     **Incorporation of Recitals.** The Recitals set forth above are incorporated herein by reference.

2.     **Allowance of Claims.** MSC shall have an allowed Class 4 General Unsecured Claim totaling $1,133,254.45 (consisting of $919,407.82 from proof of claim number 10047; $161,480.44 from scheduled claim number 281001830, and $52,366.19 from scheduled claim number 281001840) (the "MSC Allowed Claim"). Medport shall have an allowed Class 4 General Unsecured Claim of $15,595.01 from proof of claim number 10049 (the "Medport Allowed Claim," and together with the MSC Allowed Claim, the "Allowed Claims"). The Allowed Claims shall not be subject to amendment by the Creditors or offset by the Debtors. The Allowed Claims will be paid as Class 4 claims under the Plan.

3.     **Revision of Sale Procedures.** The Debtors shall amend the Sale Procedures under the Plan to conform with those attached hereto as **Exhibit 1**.

4.     **Withdrawal of Confirmation Objection.** Creditors shall withdraw the Confirmation Objection.

5.     **Withdrawal of Removal Motion.** Creditors shall withdrawal the Removal Motion.

6.     **Change of Vote.** Pursuant to Federal Rule of Bankruptcy Procedure 3018(a) and upon approval of this Stipulation by the Court, Creditors shall be deemed to change their vote rejecting the Plan to one accepting the Plan.

4

7.      **Mutual Releases.** Effective upon the entry of an order by the Court approving this Stipulation, the Parties hereby release each other and their respective agents, officers, directors, managers, members, principals, representatives, successors, assigns, affiliates, professionals, and attorneys from any and all claims, demands, damages, suits, rights, or causes of action of every kind and nature that may exist as of the Petition Date, whether known or unknown, contingent or matured, foreseen or unforeseen, asserted or unasserted, including without limitation all claims for compensatory, general, special, consequential, incidental, and punitive damages, attorney fees, and equitable relief in any way arising from, or relating to these bankruptcy cases, provided, however, the foregoing release shall not include any and all of the rights or obligations of the Debtors relating to payments related to accounts acquired under the Purchase Agreements and received by the Debtors after the Petition Date that are property of the Creditors rights and obligations of Creditors relating to payments received by the Creditors after the Petition Date that are property of the Debtors, all of which rights and obligations (and any defenses thereto) are hereby fully preserved.

8.      **Binding Effect.** This Stipulation will be binding and effective upon execution by the Parties hereto. This Stipulation may not be amended or modified without the written consent of the Parties. This Stipulation may be executed in counterparts by facsimile or other electronic transmission, each of which will be deemed an original, and all of which when taken together will constitute one document.

9.      **Integration.** This Stipulation and the exhibit(s) hereto constitute the sole agreement of Creditors and Debtors with respect to the subject matter hereof and thereof and supersede all oral negotiations and prior writings with respect to the subject matter hereof and thereof.

10.     **Written Amendments.** No amendment or extension of this Stipulation, and no waiver of any one or more of the provisions hereof shall be effective unless set forth in writing and signed by Creditors and Debtors.

11.     **Successors and Assigns.** This Stipulation: (i) shall be binding upon Debtors and Creditors and, where applicable, their respective predecessors, successors, agents and permitted assigns (including, as to Debtors, any trustee in this case or in a case under Chapter 7); and (ii) shall inure to the benefit of Debtor and Creditors and, where applicable, their respective predecessors, successors, agents and assigns.

12.     **Court Approval.** This Stipulation shall be subject to the approval of the Court and the Parties will use their best efforts to promptly seek approval of such Stipulation from the Court

Dated:  July 24, 2024
Wilmington, Delaware

**DORSEY & WHITNEY (DELAWARE) LLP**

/s/ Alessandra Glorioso
Alessandra Glorioso (DE Bar No. 5757)
300 Delaware Avenue, Suite 1010
Wilmington, Delaware 19801
Telephone: (302) 425-7171
Email: glorioso.alessandra@dorsey.com

-and-

**DORSEY & WHITNEY LLP**
Matthew Olson (*pro hac vice*)
167 Hamilton Avenue, Suite 200
Palo Alto, CA 94301
Telephone: (650) 857-1717
Email: olson.matt@dorsey.com

*Counsel for the Debtors and Debtors in Possession*

**COLE SCHOTZ P.C.**

/s/ Andrew J. Roth-Moore
Andrew L. Cole (No. 5712)
Andrew J. Roth-Moore (No. 5988)
500 Delaware Avenue, Suite 1410
Wilmington, Delaware 19801
Telephone: (302) 652-3131
Facsimile: (302) 652-3117
acole@coleschotz.com
aroth-moore@coleschotz.com

-and-

**LANGLEY & BANACK, INCORPORATED**
Allen M. DeBard, Esq. (*pro hac vice*)
745 E. Mulberry, Suite 900
San Antonio, Texas 78212
(210) 736-6600 Telephone
(210) 735-6889 Telecopier

*Counsel to Medport Billing, LLC and MSC Holding, LLC d/b/a Syndeocare*

## Exhibit 1

**Revised Sale Procedures**

## EXHIBIT I

## Post-Confirmation Sale Procedures

Pioneer Health Systems LLC and its affiliates[1] are the debtors and debtors in possession (the "Debtors") in certain Chapter 11 cases (the "Bankruptcy Cases") pending before the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"). As part of their Second Amended Subchapter V Plan of Reorganization (the "Plan"), the Debtors determined that they will solicit bids for the purchase of substantially all of their assets or equity interests, as the case may be, (the "Subject Assets") following confirmation of the Plan as a private sale after a public marketing process (a "Sale Transaction" or "Sale Transactions").[2]

The Debtors will be assisted in this sale effort by an investment banker (the "Investment Banker"), which the Debtors will retain following confirmation of the Plan. In furtherance thereof, the Debtors have established the sale procedures described herein (collectively, the "Sale Procedures") that will govern the marketing, evaluation, auction, documentation, and effectuation of a Sale Transaction or Sale Transactions. The Sale Procedures have been or will be approved by the Bankruptcy Court through its order confirming the Plan (the "Plan Confirmation Order"). Any Sale Transaction or Sale Transactions will not be approved by the Bankruptcy Court.

**1.**      **Overview of the Process.** The Debtors intend, with the assistance of the Investment Banker, to market the opportunity to purchase the Subject Assets commencing on or about September 23, 2024. In consultation with the Subchapter V Trustee, the Debtors shall promptly, but not later than September 20, 2024, retain the Investment Banker.

**2.**      **No Sale Free and Clear.** As the Sale Transaction will take place subsequent to confirmation of the Plan, the sale of assets pursuant to a Sale Transaction will not be free and clear of interests under Section 363(f) of Title 11, Chapter 11 of the United States Bankruptcy Code (the "Bankruptcy Code").

**3.**      **Due Diligence Requests.** Due diligence inquiries should be directed to the Investment Banker. Each bidder is solely responsible for conducting its own due diligence and must complete its due diligence prior to the submission of its initial bid. Access to due diligence information will be subject to a Non-Disclosure Agreement (in form acceptable to the Debtors) between Debtors and prospective bidders.

**4.**      **Deadline for Submission of Bids.** The deadline for submitting all bids is **4:00 p.m. prevailing Eastern Time on December 31, 2024** ("Bid Deadline"). The required materials comprising a bid for the Subject Assets must be delivered to the following parties (collectively, the "Bid Recipient Parties"): (i) the Investment Banker; (ii) the Debtors' counsel, Dorsey &

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of their respective tax identification numbers, are as follows: Pioneer Health Systems LLC (4107), DOC LLC (0729), DOCTX3 PLLC (2604), PAS Services PLLC (8928), and DOC Corporate Group LLC (0970). The address of the Debtors' corporate headquarters is 3300 Dallas Pkwy, Suite 200, Plano, TX 75093.

[2] The Subject Assets will not include: (i) cash, security deposits, or other cash equivalents; (ii) avoidance actions pursuant to Bankruptcy Code §§ 544, 545, 547, 548, 549, and 553(b) and any proceeds therefrom; or (iii) certain other estate claims and causes of action, all of which will be retained by the Debtors.

Whitney LLP, Attn: Matthew Olson, 167 Hamilton Avenue, Suite 200, Palo Alto, CA 94301, olson.matt@dorsey.com; and (iii) the Subchapter V Trustee, David M. Klauder, Bielli & Klauder, LLC, 1204 N. King Street, Wilmington, DE 19801, dklauder@bk-legal.com. The Debtors may, in their sole discretion, but will not be obligated to, extend the Bid Deadline.  Notice of any extension of the Bid Deadline shall be filed with the Bankruptcy Court and communicated by the Investment Banker to any potential bidders.

       5.    **<u>Submission of Bids</u>.** A bid to purchase the Subject Assets must be written in electronic form and must include the following:

       a.    A deposit of 5% of such bid is required (a "<u>Deposit</u>").  The Deposit shall be in the form of a certified check or a wire transfer delivered as directed by the Investment Banker;

       b.    An executed Asset Purchase Agreement or Equity Purchase Agreement (as applicable, a "Purchase Agreement") based on an asset or equity purchase agreement template (the "<u>Purchase Agreement Template</u>") (which the Debtors shall prepare in consultation with the Investment Banker and the Subchapter V Trustee) providing for implementation of a Sale Transaction that:

       i.    indicates which of the Subject Assets the bidder proposes to acquire pursuant to the Purchase Agreement;

       ii.    indicates which of the Debtors' liabilities the bidder intends to assume and which of the Debtors' executory contracts (including customer contracts) and unexpired leases the bidder intends to have assigned in conjunction with the Purchase Agreement; and

       iii.    indicates any material conditions to closing of the Purchase Agreement (including financing, completion of employment contracts with key employees, completion of a transition services agreement, any required software programming, due diligence, environmental and other conditions to performance by the entity; provided, however, that any financing, due diligence, environmental, or other contingencies other will be viewed disfavorably);

       c.    A red-lined copy of the Purchase Agreement showing the differences from the Purchase Agreement Template;

       d.    Written evidence demonstrating adequate assurance of future performance by the acquiring entity directly to the non-debtor parties under the unexpired leases and executory contracts to be assigned under the Purchase Agreement, with copies to the Bid Recipient Parties, with such evidence to be provided reasonably promptly upon written request. The non-debtor parties and the Bid Recipient Parties shall keep such evidence confidential;

       e.    A written statement identifying the interest holders in the acquiring entity and evidence that the board of directors (or comparable governing body) for the entity making the bid has fully authorized and approved the submission, execution, and delivery of the Purchase Agreement and the consummation of the transactions contemplated thereby; and

f.      Written evidence, such as bank or brokerage statements or a commitment from a financing source, that the bidder has the financial capability and resources to close the transactions contemplated by the Purchase Agreement, as further described in the next paragraph.

**6.      Qualification of Bid.**  On or before the Bid Deadline, prospective bidders are required to submit certain information to the Debtors to demonstrate the financial wherewithal to consummate the potential transaction under the terms and conditions of these Sale Procedures in order to prequalify to bid at the Auction. This information may include financial statements or other documents of such entity (including bank statements or other information on any third-party funding required to consummate and perform under the Purchase Agreement) establishing such entity's financial wherewithal to timely close the transactions contemplated thereunder. The Debtors will keep the information provided for qualification confidential. The Debtors shall have discretion to determine the sufficiency of such information.

After a prospective bidder has delivered a bid as provided above, the Debtors, in consultation with its advisors and Subchapter V Trustee, will determine whether such bidder (i) has submitted a bid with a cash component materially in excess of the distributions proposed in the Plan that the Debtors can distribute to Claimants on a materially faster timeframe than proposed in the Plan, (ii)  has demonstrated the financial capacity to consummate the purchase of the Subject Assets, (iii) is reasonably likely to be able to and willing to consummate the proposed transactions, and (iv) has otherwise timely satisfied the requirements described in the prior paragraph.  If a prospective bidder satisfies the requirements set forth in this section, then such bidder shall be deemed a "Qualified Bidder" and its bid shall be deemed a "Qualified Bid."

Promptly after making such determination, the Debtors will advise the bidder of such determination and, if the bid is not designated a Qualified Bid, why it is not a Qualified Bid.

**7.      Right to Credit Bid.**  Notwithstanding anything to the contrary contained herein, and for the avoidance of doubt, any secured lender of the Debtors shall have the unqualified right to credit bid up to the full amount of that secured lender's claim outstanding at the time of the Auction.  For the avoidance of doubt, every dollar of a credit bid shall be treated the same as a dollar from a cash bid, and a cash bid shall not be deemed higher or otherwise better solely for the reason that it is a cash bid and not a credit bid.

**8.      Baseline Bid.**  On or before January 8, 2025, the Debtors, in consultation with its advisors and the Subchapter V Trustee, will select the highest and otherwise best Qualified Bid to serve as the opening bid at the Auction (the "Baseline Bid," and the Qualified Bidder whose bid is the Baseline Bid, the "Baseline Bidder").

**9.      Auction.**  In the event two or more Qualified Bids are received, the Debtors will conduct an auction sale (the "Auction") at **10:00 a.m. on January 14, 2025**, at the offices of Dorsey & Whitney (Delaware) LLP, 300 Delaware Avenue, Suite 1010, Wilmington, DE 19801, or virtually, as will be designated by the Debtors in consultation with their professionals in a notice to be provided to Qualified Bidders, at which Qualified Bidders (including the Baseline Bidder) may participate.

The Debtors will announce any additions to or deletions from the Subject Assets on the day of the Auction. The Debtors assume no responsibility for, and make no representations or warranties concerning, descriptions of assets contained in marketing materials for the Auction. It is the obligation of each Qualified Bidder to verify such descriptions prior to the Auction.

The Debtors shall not be liable for any damages of any type or nature (whether in contract, tort or otherwise) sustained or claimed by any bidder or any other person or entity in connection with the Auction.

If no timely Qualified Bids are submitted on or before the Bid Deadline, the Debtors shall not hold an Auction and the Debtors shall instead proceed with performing the Plan by making payments to creditors from their future earnings.

**10.** **Prevailing Bidder(s).** For its Qualified Bid to be considered, a duly authorized representative of a Qualified Bidder must appear in person at the Auction, unless alternative arrangements satisfactory to the Debtors in their sole discretion have been made in advance. The Auction will commence with the announcement of the Baseline Bid and bidding will proceed in such manner and on such terms as are announced by the Debtors at the time of the Auction. Among other things, the Debtors may establish a minimum bidding increment at the Auction. At the conclusion of the Auction, the Debtors will announce the highest bid (the "Prevailing Bidder" or "Prevailing Bidders"). The Debtors, in consultation with its advisors and the Subchapter V Trustee, may conduct the Auction in the manner they believe will be in the best interests of the Debtors' estates.

**11.** **Backup Bids.** If for any reason the Prevailing Bidder fails to timely close the sale of the Subject Assets, the Debtors will have the right (without the requirement of further notice to any party) to close the sale of the Subject Assets pursuant to the Qualified Bid(s) designated at the Auction as the second highest and best offer (the "Backup Bid(s)"). All other Qualified Bidders shall be required to make their bids irrevocable so that their bids may be considered as a potential Backup Bid.

**12.** **Adequate Assurance of Future Performance.** Each of the Prevailing Bidder or Prevailing Bidders and the Backup Bidder or Backup Bidders must produce evidence satisfactory to the Debtors of adequate assurance of future performance by each such bidder under the unexpired leases and executory contracts to be assigned to such bidder in accordance with applicable law.  For the avoidance of doubt, no executory contracts or unexpired leases shall be assumed or assigned pursuant to Section 365 of the Bankruptcy Code.

**13.** **Right to Determine Highest and Best Bid.** The Debtors shall have the exclusive right to determine the highest or otherwise best offer. In evaluating whether a bidder has submitted the highest or otherwise best offer, the Debtors may consider, among other things: (i) the purchase price proposed in the offer; (ii) the availability of cash from the sale proceeds to pay secured claims in full in cash at closing; (iii) the availability of cash from the sale proceeds to make distributions to in full to other Claimants under the Plan; (iv) the bidder's financial condition and ability to close; (v) any proposed modifications to the Purchase Agreement Template, including any contingencies that must be satisfied prior to closing (provided, however, that any contingencies to closing will be viewed disfavorably by the Debtors); (vi) the assumption or exclusion of contracts

4

and other liabilities; and (vii) the probability that a prompt closing will occur. Any proposed modification to the terms set forth in the Purchase Agreement Template, other than an increase in the amount of the purchase price and the deletion of terms of the Purchase Agreement that are specific to the prospective bidder, may be viewed in a negative light by the Debtors.  Every dollar of a credit bid shall be treated the same as a dollar from a cash bid, and a cash bid shall not be deemed higher or otherwise better solely for the reason that it is a cash bid and not a credit bid.

The process contemplates that bidders will conduct their due diligence prior to making bids for the Subject Assets on an as is/where is basis, and due diligence or financing contingencies contained in bids will be viewed disfavorably. Qualified Bidders shall examine or inspect the Subject Assets prior to the Auction or waive such right. All assets are being sold as is, where is, without recourse to, representations by, or warranties by, the Debtors of any kind or description whatsoever, either express or implied, including, without limitation, any warranties and/or representations of merchantability, fitness for a particular purpose, physical condition, title, possession, quiet enjoyment or the like and with all faults. In addition, with respect to the Debtors' software, the Debtors make no representations or warranties regarding the Prevailing Bidder's right to use such software, as to the performance of the software, its non-infringement, or otherwise. In such circumstances, the Debtors recommend that the Prevailing Bidder contact the software manufacturer directly to resolve any such issues.

The Debtors are not responsible for the correct description, genuineness, authenticity, count of, or defect in any assets, and make no warranty or representation in connection therewith. No sale shall be set aside nor allowance made on account of any incorrectness, error in cataloging, or any imperfection not noted. No deductions will be allowed on damaged assets. All assets are being exposed for public exhibit and sold "as is, where is" and without recourse. Qualified Bidders acknowledge that they had the opportunity to inspect all assets prior to tendering their bid and waive any and all claims against the Debtors with respect thereto.

**14.**    **Return of Deposits.** The Debtors shall return the deposit of any Qualified Bidder that is not declared a Prevailing Bidder(s) or Backup Bidder(s) within three (3) business days after the conclusion of the Auction. In the event a declared Prevailing Bidder fails to timely perform any material obligation under its executed Purchase Agreement, the declared Prevailing Bidder shall forfeit all deposits made, without regard to the Debtors' ultimate damages occasioned by such failure; such deposits shall be applied to the Debtors' damages, if any, and shall not constitute liquidated damages, however, each Qualified Bidder acknowledges and agrees that under such circumstances, the Debtors' damages are not less than the amount of the deposit; and, notwithstanding the foregoing, the Debtors and the bankruptcy estate shall retain all other rights, remedies, claims, counterclaims, and defenses, including the right to seek equitable or injunctive relief.

**15.**    **Reservation of Rights.** The Debtors reserve the right, in consultation with its advisors and the Subchapter V Trustee, to alter the Sale Procedures, including advancing or extending deadlines contained herein, and to establish procedures and rules during the Auction, as they may determine reasonably appropriate to maximize the value realized by the Debtors' estates from the Sale Transaction(s).  The Debtors further reserve the right, in consultation with its advisors and the Subchapter V Trustee, to determine that closing on a sale is not in the best interests of the Debtors, their estates, and creditors.

4868-8475-5148\6

16. **Damages for Controlling of Sales Price.** All potential bidders are advised that, under applicable law, the Debtors and their estates may avoid a transaction and recover damages (actual and possibly punitive) if the sale price was controlled by any undisclosed agreement amongst the bidders.

17. **Notices to Creditors,** The Debtors shall file on the docket for the Bankruptcy Cases and provide notice to (i) the Office of the United States Trustee, (ii) the Subchapter V Trustee, and (iii) those parties who have requested notice pursuant to Federal Rule of Bankruptcy Procedure 2002 of the following events:

    a.  Selection of the Investment Banker;

    b.  The Bid Deadline;

    c.  Selection of a Baseline Bid;

    d.  In the event there is an Auction, that an Auction has been scheduled; and

    e.  Selection of a Prevailing Bid and any Back Up Bids.

Any such notice need not include information on identity of bidders (qualified or not, except for any notice of selection of a Prevailing Bid or any Back Up Bids), material terms of bids, or other information that may, in the opinion of the Debtors, in consultation with its advisors and the Subchapter V Trustee, chill the marketing and bidding process.

18. **Subchapter V Trustee's Right to be Heard.** The Debtors confirm the right of the Subchapter V Trustee to petition the Bankruptcy Court for appropriate relief and to be heard by the Bankruptcy Court in the event the Subchapter V Trustee believes the Debtors are not proceeding in good faith under these Sale Procedures or are not proceeding with an offer that is in the best interests of the Debtors and their creditors, equity interest holders, and other stakeholders.

6