**Exhibit 2**

**Revised Exhibit I to Second Amended Plan**

**EXHIBIT I**

**Post-Confirmation Sale Procedures**

Pioneer Health Systems LLC and its affiliates[1] are the debtors and debtors in possession (the "Debtors") in certain Chapter 11 cases (the "Bankruptcy Cases") pending before the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"). As part of their Second Amended Subchapter V Plan of Reorganization (the "Plan"), the Debtors determined that they will solicit bids for the purchase of substantially all of their assets or equity interests, as the case may be, (the "Subject Assets")[2] as a sale after a public marketing process (a "Sale Transaction" or "Sale Transactions") following confirmation of the Plan but before the Plan's effective date.

The Debtors will be assisted in this sale effort by an investment banker (the "Investment Banker"), which the Debtors will retain following confirmation of the Plan. In furtherance thereof, the Debtors have established the sale procedures described herein (collectively, the "Sale Procedures") that will govern the marketing, evaluation, auction, documentation, and effectuation of a Sale Transaction or Sale Transactions. The Sale Procedures have been approved by the Bankruptcy Court through its order confirming the Plan (the "Plan Confirmation Order"). Any Sale Transaction or Sale Transactions will be approved by the Bankruptcy Court.

1. **Overview of the Process.** The Debtors intend, with the assistance of the Investment Banker, to market the opportunity to purchase the Subject Assets commencing on or about September 23, 2024. In consultation with the Subchapter V Trustee, the Debtors shall promptly, but not later than September 20, 2024, retain the Investment Banker.

2. **Sale Free and Clear.** As the Sale Transaction will take place prior to the effective date of the Plan, the sale of assets pursuant to a Sale Transaction may be free and clear of interests under Section 363(f) of Title 11, Chapter 11 of the United States Bankruptcy Code (the "Bankruptcy Code").

3. **Due Diligence Requests.** Due diligence inquiries should be directed to the Investment Banker. Each bidder is solely responsible for conducting its own due diligence and must complete its due diligence prior to the submission of its initial bid. Access to due diligence information will be subject to a Non-Disclosure Agreement (in form acceptable to the Debtors) between Debtors and prospective bidders.

4. **Deadline for Submission of Bids.** The deadline for submitting all bids is **4:00 p.m. prevailing Eastern Time on December 31, 2024** ("Bid Deadline"). The required materials comprising a bid for the Subject Assets must be delivered to the following parties (collectively,

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of their respective tax identification numbers, are as follows: Pioneer Health Systems LLC (4107), DOC LLC (0729), DOCTX3 PLLC (2604), PAS Services PLLC (8928), and DOC Corporate Group LLC (0970). The address of the Debtors' corporate headquarters is 3300 Dallas Pkwy, Suite 200, Plano, TX 75093.

[2] The Subject Assets will not include: (i) cash, security deposits, or other cash equivalents; (ii) avoidance actions pursuant to Bankruptcy Code §§ 544, 545, 547, 548, 549, and 553(b) and any proceeds therefrom; or (iii) certain other estate claims and causes of action, all of which will be retained by the Debtors.

the "Bid Recipient Parties"): (i) the Investment Banker; (ii) the Debtors' counsel, Dorsey & Whitney LLP, Attn: Matthew Olson, 167 Hamilton Avenue, Suite 200, Palo Alto, CA 94301, olson.matt@dorsey.com; and (iii) the Subchapter V Trustee, David M. Klauder, Bielli & Klauder, LLC, 1204 N. King Street, Wilmington, DE 19801, dklauder@bk-legal.com. The Debtors may, in their sole discretion, but will not be obligated to, extend the Bid Deadline. Notice of any extension of the Bid Deadline shall be filed with the Bankruptcy Court and communicated by the Investment Banker to any potential bidders.

5. **Submission of Bids.** A bid to purchase the Subject Assets must be written in electronic form and must include the following:

    a. A deposit of 5% of such bid is required (a "Deposit"). The Deposit shall be in the form of a certified check or a wire transfer delivered as directed by the Investment Banker;

    b. An executed Asset Purchase Agreement or Equity Purchase Agreement (as applicable, a "Purchase Agreement") based on an asset or equity purchase agreement template (the "Purchase Agreement Template") (which the Debtors shall prepare in consultation with the Investment Banker and the Subchapter V Trustee) providing for implementation of a Sale Transaction that:

        i. indicates which of the Subject Assets the bidder proposes to acquire pursuant to the Purchase Agreement;

        ii. indicates which of the Debtors' liabilities the bidder intends to assume and which of the Debtors' executory contracts (including customer contracts) and unexpired leases the bidder intends to have assigned in conjunction with the Purchase Agreement; and

        iii. indicates any material conditions to closing of the Purchase Agreement (including financing, completion of employment contracts with key employees, completion of a transition services agreement, any required software programming, due diligence, environmental and other conditions to performance by the entity; provided, however, that any financing, due diligence, environmental, or other contingencies other will be viewed disfavorably);

    c. A red-lined copy of the Purchase Agreement showing the differences from the Purchase Agreement Template;

    d. Written evidence demonstrating adequate assurance of future performance by the acquiring entity directly to the non-debtor parties under the unexpired leases and executory contracts to be assigned under the Purchase Agreement, with copies to the Bid Recipient Parties, with such evidence to be provided reasonably promptly upon written request. The non-debtor parties and the Bid Recipient Parties shall keep such evidence confidential;

    e. A written statement identifying the interest holders in the acquiring entity and evidence that the board of directors (or comparable governing body) for the entity making the bid has fully authorized and approved the submission, execution, and delivery of the Purchase Agreement and the consummation of the transactions contemplated thereby; and

    f. Written evidence, such as bank or brokerage statements or a commitment from a financing source, that the bidder has the financial capability and resources to close the transactions contemplated by the Purchase Agreement, as further described in the next paragraph.

  **6.** **Qualification of Bid.** On or before the Bid Deadline, prospective bidders are required to submit certain information to the Debtors to demonstrate the financial wherewithal to consummate the potential transaction under the terms and conditions of these Sale Procedures in order to prequalify to bid at the Auction. This information may include financial statements or other documents of such entity (including bank statements or other information on any third-party funding required to consummate and perform under the Purchase Agreement) establishing such entity's financial wherewithal to timely close the transactions contemplated thereunder. The Debtors will keep the information provided for qualification confidential. The Debtors shall have discretion to determine the sufficiency of such information.

  After a prospective bidder has delivered a bid as provided above, the Debtors, in consultation with their advisors and Subchapter V Trustee, will determine whether such bidder (i) has submitted a bid with a cash component materially in excess of the distributions proposed in the Plan that the Debtors can distribute to Claimants on a materially faster timeframe than proposed in the Plan, (ii) has demonstrated the financial capacity to consummate the purchase of the Subject Assets, (iii) is reasonably likely to be able to and willing to consummate the proposed transactions, and (iv) has otherwise timely satisfied the requirements described in the prior paragraph. If a prospective bidder satisfies the requirements set forth in this section, then such bidder shall be deemed a "Qualified Bidder" and its bid shall be deemed a "Qualified Bid."

 Promptly after making such determination, the Debtors will advise the bidder of such determination and, if the bid is not designated a Qualified Bid, why it is not a Qualified Bid.

  **7.** **Right to Credit Bid.** Notwithstanding anything to the contrary contained herein, and for the avoidance of doubt, any secured lender of the Debtors shall have the unqualified right to credit bid up to the full amount of that secured lender's claim outstanding at the time of the Auction. For the avoidance of doubt, every dollar of a credit bid shall be treated the same as a dollar from a cash bid, and a cash bid shall not be deemed higher or otherwise better solely for the reason that it is a cash bid and not a credit bid.

  **8.** **Baseline Bid.** On or before January 8, 2025, the Debtors, in consultation with their advisors and the Subchapter V Trustee, will select the highest and otherwise best Qualified Bid to serve as the opening bid at the Auction (the "Baseline Bid," and the Qualified Bidder whose bid is the Baseline Bid, the "Baseline Bidder").

  **9.** **Auction.** In the event two or more Qualified Bids are received, the Debtors will conduct an auction sale (the "Auction") at **10:00 a.m. on January 14, 2025**, at the offices of Dorsey & Whitney (Delaware) LLP, 300 Delaware Avenue, Suite 1010, Wilmington, DE 19801, at such other place as the Debtors may determine, or virtually, as will be designated by the Debtors in consultation with their professionals in a notice to be provided to Qualified Bidders and others attending the Auction, at which Qualified Bidders (including the Baseline Bidder) may participate. For the avoidance of doubt, the Subchapter V Trustee may attend the auction. Creditors who notify the Debtors' counsel by email at olson.matt@dorsey.com of their interest in observing the Auction

by **4:00 p.m. prevailing Eastern Time on December 30, 2024** (the "Registration Deadline"), may observe the live portions of the Auction. In the event that any creditor who attends the Auction is, in the opinion of the Debtors (in consultation with their advisors), unreasonably disruptive to the Auction, then the Debtors may exclude that creditor from any further observation of the Auction.

The Debtors will announce any additions to or deletions from the Subject Assets on the day of the Auction. The Debtors assume no responsibility for, and make no representations or warranties concerning, descriptions of assets contained in marketing materials for the Auction. It is the obligation of each Qualified Bidder to verify such descriptions prior to the Auction.

The Debtors shall not be liable for any damages of any type or nature (whether in contract, tort or otherwise) sustained or claimed by any bidder or any other person or entity in connection with the Auction.

If no timely Qualified Bids are submitted on or before the Bid Deadline, the Debtors shall not hold an Auction and the Debtors shall instead proceed with performing the Plan by making payments to creditors from their future earnings.

10. **Prevailing Bidder(s).** For its Qualified Bid to be considered, a duly authorized representative of a Qualified Bidder must appear in person at the Auction, unless alternative arrangements satisfactory to the Debtors in their sole discretion have been made in advance. The Auction will commence with the announcement of the Baseline Bid and bidding will proceed in such manner and on such terms as are announced by the Debtors at the time of the Auction. Among other things, the Debtors may establish a minimum bidding increment at the Auction. At the conclusion of the Auction, the Debtors will announce the highest and best bid (the "Prevailing Bidder" or "Prevailing Bidders") and will promptly thereafter file a notice with the Bankruptcy Court identifying the (i) Prevailing Bidder or Prevailing Bidders and (ii) second highest and best offer(s) (the "Prevailing Bidder Notice"). The Debtors, in consultation with their advisors and the Subchapter V Trustee, may conduct the Auction in the manner they believe will be in the best interests of the Debtors' estates.

11. **Backup Bids**. If for any reason the Prevailing Bidder fails to timely close the sale of the Subject Assets, the Debtors will have the right (without the requirement of further notice to any party) to close the sale of the Subject Assets pursuant to the Qualified Bid(s) designated at the Auction and identified in the Prevailing Bidder Notice as the second highest and best offer (the "Backup Bid(s)"). All other Qualified Bidders shall be required to make their bids irrevocable so that their bids may be considered as a potential Backup Bid.

12. **Adequate Assurance of Future Performance.** Each of the Prevailing Bidder or Prevailing Bidders and the Backup Bidder or Backup Bidders must produce evidence satisfactory to the Debtors of adequate assurance of future performance by each such bidder under the unexpired leases and executory contracts to be assigned to such bidder in accordance with Section 365 of the Bankruptcy Code.

13. **Right to Determine Highest and Best Bid**. The Debtors shall have the exclusive right to determine the highest or otherwise best offer. In evaluating whether a bidder has submitted

the highest or otherwise best offer, the Debtors may consider, among other things: (i) the purchase price proposed in the offer; (ii) the availability of cash from the sale proceeds to pay secured claims in full in cash at closing; (iii) the availability of cash from the sale proceeds to make distributions to in full to other Claimants under the Plan; (iv) the bidder's financial condition and ability to close; (v) any proposed modifications to the Purchase Agreement Template, including any contingencies that must be satisfied prior to closing (provided, however, that any contingencies to closing will be viewed disfavorably by the Debtors); (vi) the assumption or exclusion of contracts and other liabilities; and (vii) the probability that a prompt closing will occur. Any proposed modification to the terms set forth in the Purchase Agreement Template, other than an increase in the amount of the purchase price and the deletion of terms of the Purchase Agreement that are specific to the prospective bidder, may be viewed in a negative light by the Debtors. Every dollar of a credit bid shall be treated the same as a dollar from a cash bid, and a cash bid shall not be deemed higher or otherwise better solely for the reason that it is a cash bid and not a credit bid.

The process contemplates that bidders will conduct their due diligence prior to making bids for the Subject Assets on an as is/where is basis, and due diligence or financing contingencies contained in bids will be viewed disfavorably. Qualified Bidders shall examine or inspect the Subject Assets prior to the Auction or waive such right. All assets are being sold as is, where is, without recourse to, representations by, or warranties by, the Debtors of any kind or description whatsoever, either express or implied, including, without limitation, any warranties and/or representations of merchantability, fitness for a particular purpose, physical condition, title, possession, quiet enjoyment or the like and with all faults. In addition, with respect to the Debtors' software, the Debtors make no representations or warranties regarding the Prevailing Bidder's right to use such software, as to the performance of the software, its non-infringement, or otherwise. In such circumstances, the Debtors recommend that the Prevailing Bidder contact the software manufacturer directly to resolve any such issues.

The Debtors are not responsible for the correct description, genuineness, authenticity, count of, or defect in any assets, and make no warranty or representation in connection therewith. No sale shall be set aside nor allowance made on account of any incorrectness, error in cataloging, or any imperfection not noted. No deductions will be allowed on damaged assets. All assets are being exposed for public exhibit and sold "as is, where is" and without recourse. Qualified Bidders acknowledge that they had the opportunity to inspect all assets prior to tendering their bid and waive any and all claims against the Debtors with respect thereto.

14.     **Return of Deposits.** The Debtors shall return the deposit of any Qualified Bidder that is not declared a Prevailing Bidder(s) or Backup Bidder(s) within three (3) business days after the conclusion of the Auction. In the event a declared Prevailing Bidder fails to timely perform any material obligation under its executed Purchase Agreement, the declared Prevailing Bidder shall forfeit all deposits made, without regard to the Debtors' ultimate damages occasioned by such failure; such deposits shall be applied to the Debtors' damages, if any, and shall not constitute liquidated damages, however, each Qualified Bidder acknowledges and agrees that under such circumstances, the Debtors' damages are not less than the amount of the deposit; and, notwithstanding the foregoing, the Debtors and the bankruptcy estate shall retain all other rights, remedies, claims, counterclaims, and defenses, including the right to seek equitable or injunctive relief.

15. **Sale Confirmation Hearing**. At least 21 days before the Auction, the Debtors shall file a motion to approve the sale (the "Sale Motion"). Any and all objections to a sale of the Debtors' assets and entry of an order approving the sale must be filed with the Court no later than 14 days following service of the Sale Motion. The Debtors shall provide notice of the selection of the Prevailing Bidder(s) and the Back-Up Bid(s) (the "Selection Notice") within one business day of the conclusion of the Auction and the deadline to object to the sale, solely with respect to the conduct of the Auction and the identity of the Prevailing Bidder(s) and Back-Up Bid(s), shall identified in the Selection Notice, but shall be no earlier than seven days thereafter.

16. **Assumption and Assignment Procedures**. As part of the sale, the Debtors may also seek to assume and assign certain of its executory contracts and unexpired leases, or assign certain of its executory contracts and unexpired leases that it has already assumed (collectively, the "Assumed Executory Contracts") pursuant to § 365. The Assumed Executory Contracts will be those contracts and leases that the Debtor believes may be assumed and assigned as part of the orderly sale of the Subject Assets; provided, that, the Prevailing Bidder(s) may choose to exclude (or to add) contracts or leases to the list of Assumed Executory Contracts, subject to notice to the counter-parties to any Assumed Executory Contracts which are added. The Debtor will file with the Court and serve a notice upon each counterparty to the Assumed Executory Contracts (the "Cure Notice"). The Cure Notice will be filed by November 15, 2024, and objections to the assumption and assignment of Assumed Executory Contracts (including the Cure Amount (defined below)) must be filed and served by December 6, 2024. The Cure Notice also will identify the amounts, if any, that the Debtor believes are owed to each counterparty to an Assumed Executory Contract in order to cure any defaults that exist under such contract (the "Cure Amounts"). The adequate assurance objection deadline will be set forth and noticed in connection with the Sale Motion.

17. **Good Faith Finding Pursuant to § 363(m) and Adequate Assurance of Future Performance**. Each of the Prevailing Bidder or Prevailing Bidders and the Backup Bidder or Backup Bidders must produce a competent witness at the hearing on the Sale Motion (and any subsequent hearing), or file a declaration under penalty of perjury, to provide testimony, if necessary, to establish (i) the connections or lack thereof to the Debtors; (ii) their good faith in the negotiations and sales process; and (iii) adequate assurance of future performance by each such bidder under the Assumed Executory Contracts, to the extent required by Bankruptcy Code sections 365(b)(1)(C) and/or 365(f)(2)(B).

18. **Reservation of Rights**. The Debtors reserve the right, in consultation with their advisors and the Subchapter V Trustee, to alter the Sale Procedures, including advancing or extending deadlines contained herein, filing a motion to establish selection of a stalking horse bidder and/or stalking horse bid protections, and to establish procedures and rules during the Auction, as they may determine reasonably appropriate to maximize the value realized by the Debtors' estates from the Sale Transaction(s). The Debtors further reserve the right, in consultation with their advisors and the Subchapter V Trustee, to determine that closing on a sale is not in the best interests of the Debtors, their estates, and creditors. If the Debtors make such a determination, the Debtors shall file a notice with the Bankruptcy Court (the "Sale Process Termination Notice").

19. **Damages for Controlling of Sales Price.** All potential bidders are advised that, under applicable law, the Debtors and their estates may avoid a transaction and recover damages (actual and possibly punitive) if the sale price was controlled by any undisclosed agreement amongst the bidders.

20. **Notices to Creditors.** The Debtors shall file on the docket for the Bankruptcy Cases and provide notice to (i) the Office of the United States Trustee, (ii) the Subchapter V Trustee, and (iii) those parties who have requested notice pursuant to Federal Rule of Bankruptcy Procedure 2002 of the following events:

   a. Selection of the Investment Banker;

   b. The Registration Deadline;

   c. The Bid Deadline;

   d. Selection of a Baseline Bid;

   e. In the event there is an Auction, that an Auction has been scheduled;

   f. Selection of a Prevailing Bid and any Back Up Bids; and

   g. The termination of the sale process without selection of a Prevailing Bid (if applicable).

Any such notice need not include information on identity of bidders (qualified or not, except for any notice of selection of a Prevailing Bid or any Back Up Bids), material terms of bids, or other information that may, in the opinion of the Debtors, in consultation with their advisors and the Subchapter V Trustee, chill the marketing and bidding process.

21. **Subchapter V Trustee's Right to be Heard.** The Debtors confirm the right of the Subchapter V Trustee to petition the Bankruptcy Court for appropriate relief and to be heard by the Bankruptcy Court in the event the Subchapter V Trustee believes the Debtors are not proceeding in good faith under these Sale Procedures or are not proceeding with an offer that is in the best interests of the Debtors and their creditors, equity interest holders, and other stakeholders.