**Exhibit B**

**Redline of Proposed Final Order Against Interim Order**

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | Chapter 11 (Subchapter V) |
| PIONEER HEALTH SYSTEMS LLC, *et. al.*[1] | Case No. 24-10279 (JKS) |
|  | (Jointly Administered) |
| Debtors. | **Re: Docket ~~No~~Nos. 307, 309, 344** |

~~**INTERIM**~~**FINAL ORDER PURSUANT TO 11 U.S.C. §§ 105, 361, 362, 363, 364, 503, AND 507
(I) AUTHORIZING THE DEBTORS TO OBTAIN ~~ADDITIONAL~~ SENIOR SECURED SUPERPRIORITY POSTPETITION FINANCING; (II) GRANTING LIENS AND SUPERPRIORITY ADMINISTRATIVE EXPENSE CLAIMS; (III) AUTHORIZING USE OF CASH COLLATERAL; (IV) MODIFYING THE AUTOMATIC STAY; AND (V) ~~SCHEDULING A FINAL HEARING; AND (VI)~~ GRANTING RELATED RELIEF**

Upon the motion (the "**Motion**")[2] of the above-captioned debtors (the "**Debtors**") pursuant to sections 105, 361, 362, 363, 364(c)(1), 364(c)(2), 364(c)(3), 364(d), 364(e), and 507 of title 11 of the United States Code (the "**Bankruptcy Code**"), Rules 2002, 4001, 6004, and 9014 of the Federal Rules of Bankruptcy Procedure (as amended, the "**Bankruptcy Rules**"), and Rules 2002-1, 4001-1(b), 4002-1(i), and 9013-1 of the Bankruptcy Local Rules (the "**Local Rules**") of the United States Bankruptcy Court for the District of Delaware (this "**Court**"), seeking, inter alia:

(1)    authorization for the Debtors to obtain postpetition financing pursuant to the DIP Facility (as defined below) subject to the terms and limitations set forth herein and in the Debtor-in-Possession Loan and Security Agreement attached hereto as **Exhibit A** (as the same may be amended, restated, amended and restated, or supplemented, the "**Credit Agreement**") in

---

[1]    The Debtors in these Chapter 11 Cases, along with the last four digits of their respective tax identification numbers, are as follows: Pioneer Health Systems LLC (4107), DOC LLC (0729), DOCTX3 PLLC (2604), PAS Services PLLC (8928), and DOC Corporate Group LLC (0970). The address of the Debtors' corporate headquarters is 3300 Dallas Pkwy, Suite 200, Plano, TX 75093.

[2]    Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Motion.

all respects, the Debtors' obligations under the DIP Facility, which consists of a senior secured super-priority term loan credit facility (the "**DIP Facility**"), on the terms and conditions set forth in the Credit Agreement (as the same may be amended, restated, amended and restated, supplemented, waived, extended, or otherwise modified from time to time, and, together with any other related agreements, documents, security agreements, or pledge agreements, including ~~this~~the interim order [Docket No. 343] (the "**Interim Order**") and ~~any~~this final order granting the relief requested in the Motion (the "**Final Order**"), collectively, the "**DIP Loan Documents**")), by and among the Debtors and TFGH Ventures LLC (the "**DIP Lender**"), in an aggregate principal amount of up to FOUR HUNDRED AND FIFTY THOUSAND DOLLARS AND NO CENTS ($450,000.00) as term loan commitments (the "**DIP Loans**") to the Debtors upon entry of ~~this~~the Interim Order and satisfaction of the other conditions set forth therein in an initial amount not to exceed TWO HUNDRED THOUSAND DOLLARS AND NO CENTS ($200,000.00) (the "**Initial DIP Loan**"), and the remainder of the DIP Facility available upon entry of ~~the~~this Final Order to the extent set forth therein;

(2)    authorization for the Debtors to execute, deliver, and enter into the DIP Loan Documents and to perform all of the Debtors' respective obligations thereunder, and such other and further acts as may be required in connection with the DIP Loan Documents;

(3)    authorization for the Debtors to pay all amounts, obligations, and liabilities owing or payable to the DIP Lender pursuant to the DIP Loan Documents, including, without limitation, any principal, interest, fees, expenses and other amounts payable to the DIP Lender pursuant to the DIP Loan Documents (including the reasonable and documented fees and expenses of the DIP Lender's attorneys, advisors, accountants, and other consultants), any obligations in respect of indemnity claims, whether contingent or absolute, to the extent constituting all Debtors' obligations of any kind under the DIP Loan Documents (such obligations collectively, the "**DIP Obligations**"); authorization for the Debtors, immediately upon entry of this ~~Interim~~Final Order, to use proceeds of the DIP Facility as expressly provided in the DIP Loan Documents and solely in accordance with this ~~Interim~~Final Order and the applicable Approved Budget (as defined below) (subject to permitted variances and other exclusions set forth in the DIP Loan Documents) to: (A) pay costs, premiums, fees, and expenses related to the above-captioned cases (the "**Chapter 11 Cases**") and in connection with the establishment and enforcement of the DIP Facility; (B) provide financing for working capital and for other purposes of the Debtors in accordance with the Approved Budget (subject to permitted variances and other exclusions set forth in the DIP Loan Documents); and (C) make permitted payments in respect of those obligations of the Debtors owed to David Hassinger (the "**Initial DIP Lender**") with respect to the financing facility ("**Initial DIP Facility**") and the Debtor-in-Possession Loan and Security Agreement between the Initial DIP Lender and the Debtors (as the same may be amended, restated, amended and restated, supplemented, waived, extended, or otherwise modified from time to time, and, together with any other related agreements, documents, security agreements, or pledge agreements, including the Initial DIP Order (defined below, ~~this~~the Interim Order and ~~any~~this Final Order, collectively, the "**Initial DIP Loan Documents**") approved by Court in the *Final Order Pursuant to 11 U.S.C. §§ 105, 361, 362, 363, 364, 503, and 507 (I) Authorizing the Debtors to Obtain Senior Secured Superpriority Postpetition Financing; (II) Granting Liens and Superpriority Administrative Expense Claims; (III) Authorizing Use of Cash Collateral; (IV) Modifying the Automatic Stay;*

2

*And (V) Granting Related Relief* ("**Initial DIP Order**"), pursuant to which the Debtors granted to the Initial DIP Lender certain security interests in and liens on certain collateral;

(4) the granting and approval of superpriority administrative expense claim status, pursuant to Bankruptcy Code sections 364(c)(1), 503(b)(1), and 507(b), to the DIP Lender, in respect of all DIP Obligations, which superpriority administrative expense claim shall be paid *pari passu* with the superpriority administrative expense claim of the Initial DIP Lender ("**Initial Superpriority Administrative Expense DIP Claim**") under the Initial DIP Order;

(5) the granting to the DIP Lender of valid, enforceable, non-avoidable, automatically and fully perfected DIP Liens (as defined below) in all DIP Collateral (as defined below), including, without limitation, any DIP Collateral in the form of "cash collateral" as such term is defined in Bankruptcy Code section 363(a) (the "**Cash Collateral**"), to secure the DIP Obligations, which DIP Liens shall be subject to the relative rankings and priorities set forth herein and in the other DIP Loan Documents, and such DIP Collateral will not be charged pursuant to section 506(c) or any other provision of the Bankruptcy Code;

(6) authorization for the Debtors to use, among other things, solely in accordance with the applicable Approved Budget (subject to permitted variances and other exclusions set forth in the DIP Loan Documents) and the limitations provided herein and in the DIP Loan Documents, and any Cash Collateral in which the Initial DIP Lender has an interest;

(7) the modification of the automatic stay imposed by Bankruptcy Code section 362 to the extent necessary to implement and effectuate the terms and provisions of this ~~Interim~~Final Order and the other DIP Loan Documents to the extent hereinafter set forth;

(8) a waiver of any applicable stay (including under Bankruptcy Rule 6004) and providing for immediate effectiveness of this ~~Interim~~Final Order;

(9) subject to entry of a Final Order, a waiver of the Debtors' ability to surcharge pursuant to Bankruptcy Code section 506(c) against any DIP Collateral and Initial DIP Collateral any right of the Debtors under the "equities of the case" exception in Bankruptcy Code section 552(b) with respect to the DIP Collateral and/or Initial DIP Collateral; and

~~(10) the scheduling of a final hearing on the Motion (the "**Final Hearing**") to consider entry of the Final Order granting the relief requested in the Motion on a final basis and approving the form of notice with respect to the Final Hearing; and~~

(10) ~~(11)~~ the Court to grant such other and further relief as is just and proper.

The initial hearing on the Motion having been held by this Court on August 1, 2024 (as may be continued, the "**Interim Hearing**") and the final hearing on the Motion have been held by this Court on August 13, 2024 (the "**Final Hearing**," together with the Interim Hearing, the

"**DIP Hearings**"), and upon the record made by the Debtors at the ~~Interim Hearing~~DIP Hearings, including the Motion, any exhibits in connection with the foregoing, and the filings and pleadings in these Chapter 11 Cases, the Court having found that the ~~interim~~final relief requested in the Motion, as modified herein, is fair and reasonable and is in the best interests of the Debtors, the Debtors' bankruptcy estates (as defined under Bankruptcy Code section 541, the "**Estates**"), their stakeholders, and other parties in interest, and represents a sound exercise of the Debtors' business judgment and is essential for the continued operation of the Debtors' businesses and preservation of the jobs of the Debtors' employees; ~~it appearing to the Court that granting the interim relief requested in the Motion is necessary to avoid immediate and irreparable harm to the Debtors and their Estates pending the Final Hearing;~~ and notice of the Motion, the ~~interim~~final relief requested therein, the Final Hearing, and the entry of the Interim ~~Hearing~~DIP Order (the "**Notice**") having been given by the Debtors on: (a) the United States Trustee for the District of Delaware (the "**U.S. Trustee**"); (b) the entities listed as holding the 20 largest unsecured claims against the Debtor (the "**20 Largest Unsecured Creditors**"); (c) counsel to the DIP Lender; (d) counsel for the Initial DIP Lender; (e) the subchapter V trustee (David M. Klauder, Esq.) (the "**Subchapter V Trustee**"); (f) the United States Attorney's Office for the District of Delaware; (g) the Internal Revenue Service; (h) the state attorneys general for all states in which the Debtors conduct business; (i) all parties which, to the best of Debtors' knowledge, information and belief, have asserted a lien in the Debtors' assets; and (j) any party that requests service pursuant to Bankruptcy Rule 2002 (collectively, the "**Notice Parties**") as described in the *Certificate of Service* filed on August 1, 2024 [Dkt. No. 322]~~;~~ ~~and the opportunity for an interim hearing on the Motion was appropriate in connection with the Motion;~~*Certificate of Service* filed on August 9, 2024 [Dkt. No. 344]; and all objections, if any,

4

to the ~~interim~~final relief requested in the Motion having been withdrawn, resolved, or overruled by the Court; and after due deliberation thereon and good and sufficient cause appearing therefor;

THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:[3]

A.    Petition Date. On February 21, 2024 (the "**Petition Date**"), each of the Debtors filed a voluntary petition for relief under subchapter V of chapter 11 of the Bankruptcy Code. The Debtors continue to operate their businesses and manage their properties as debtors-in-possession pursuant to section 1182(2) of the Bankruptcy Code.  No chapter 11 trustee (other than the Subchapter V Trustee) or examiner has been appointed in the Chapter 11 Cases.

B.    Jurisdiction and Venue.  This Court has jurisdiction over these proceedings pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b). Pursuant to Local Rule 9013-1(f), the Debtors consent to the entry of a final judgment or order with respect to the Motion if it is determined that this Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory and legal predicates for the relief sought herein are Bankruptcy Code sections 105, 361, 362, 363, 364, 503, and 507, Bankruptcy Rules 2002, 4001, 9013, and 9014 and Local Rules 7007-1, 9013-1, 9013-4, and 9014-2.

---

[3] The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

0
~~4888-9946-8500\3~~4886-4669-6150\3

C.    <u>Notice</u>. The Notice was given as described in the *Certificate of Service* filed on August 1, 2024 [Dkt. No. 322] and the *Certificate of Service* filed on August 9, 2024 [Dkt. No. 244].

D.    <u>Postpetition Financing</u>. The Debtors have requested from the DIP Lender, and the DIP Lender is willing, subject to the terms of this ~~Interim~~Final Order and satisfaction of the conditions set forth in the DIP Loan Documents, to extend the DIP Loans on the terms and conditions set forth in this ~~Interim~~Final Order and the DIP Loan Documents, respectively.

E.    <u>Need for Postpetition Financing</u>. The Debtors do not have sufficient liquidity, including Cash Collateral, to both engage in a process to solicit bids for the purchase of substantially all of their assets or equity interests and operate their businesses in the ordinary course of business without the financing requested in the Motion.  The Debtors' ability to maintain business relationships with its vendors, suppliers, and customers, pay employees, taxes, and certain fees and expenses as set forth herein, and to otherwise fund their operations is essential to the Debtors' continued viability as the Debtors seek to maximize the value of the assets of the Estates for the benefit of all creditors of the Debtors.  The ability of the Debtors to obtain sufficient working capital and liquidity through the proposed postpetition financing arrangements with the DIP Lender as set forth in this ~~Interim~~Final Order and other DIP Loan Documents, as applicable, is vital to the preservation and maintenance of the going concern value of each Debtor.  Accordingly, the Debtors have an immediate need to obtain the postpetition financing to, among other things, permit the orderly continuation of the operation of their businesses, minimize the disruption of their business operations, enable the Debtors to engage in a process to solicit bids for the purchase of substantially all of their assets or equity

interests; and preserve and maximize the value of the assets of the Debtors' Estates to maximize the recovery to all creditors of the Estates.

F.    <u>No Credit Available on More Favorable Terms</u>. The Debtors are unable to procure financing in the form of unsecured credit allowable as an administrative expense under sections 364(a), 364(b), or 503(b)(1) of the Bankruptcy Code or in exchange for the grant of a superpriority administrative expense.  The Debtors assert in the Motion and the declaration of Colin Chenault (the "**Chenault Declaration**"), and demonstrated at the ~~Interim Hearing~~DIP Hearings, that they have been unable to procure the necessary secured financing pursuant to Sections 364(c) or 364(d) of the Bankruptcy Code on terms more favorable, taken as a whole, than the financing offered by the DIP Lender pursuant to the DIP Loan Documents.  In light of the foregoing, and considering all alternatives, the Debtors have reasonably and properly concluded, in the exercise of their sound business judgment, that the DIP Facility represents the best financing available to the Debtors at this time, and it is in the best interests of the Debtors, their Estates, and all of their stakeholders.

G.    <u>Budget</u>. The Debtors have prepared and delivered to the DIP Lender an initial budget (the "**Initial Budget**"), a copy of which is attached hereto as **Exhibit B**.  The Initial Budget reflects the Debtors' anticipated cash receipts and anticipated disbursements for each calendar week during the period from July 31, 2024 through and including December 31, 2024 (the Initial Budget and each subsequent budget approved by the DIP Lender then in effect, an "**Approved Budget**").  The Debtors believe that the Initial Budget is reasonable under the facts and circumstances.  The DIP Lender is relying upon the Debtors' agreement to comply on the terms set forth in the Approved Budget, the other DIP Loan Documents, and this ~~Interim~~Final Order in determining to enter into the postpetition financing arrangements provided for herein.

0
~~4888-9946-8500\3~~4886-4669-6150\3

H.    <u>Case Milestones</u>.  The DIP Lender's willingness to make the DIP Loans and the willingness of the Initial DIP Lender to consent to the use of Cash Collateral (each on the terms and subject to the conditions set for in the DIP Loan Documents and this ~~Interim~~<u>Final</u> Order) is predicated upon progress in the Debtors' process to confirm a chapter 11 plan of reorganization including a comprehensive sale process as set forth in the Milestones (defined below).  Absent the transactions and other activities contemplated with respect to the foregoing the DIP Lender and the Initial DIP Lender would not have agreed to (as applicable) make the DIP Loan or consent to use of Cash Collateral as provided in the DIP Loan Documents and this ~~Interim~~<u>Final</u> Order.

I.    <u>Certain Conditions to DIP Facilities</u>. The DIP Lender's willingness to make the DIP Loans is conditioned upon, among other things: (a) the Debtors obtaining Court approval to enter into the DIP Loan Documents and to incur all of the respective obligations thereunder, and to confer upon the DIP Lender all applicable rights, powers, and remedies thereunder in each case as modified by this ~~Interim~~<u>Final</u> Order; (b) the DIP Lender being granted, as security for the prompt payment of the DIP Facilities and all other obligations of the Debtors under the DIP Loan Documents, and, (y) superpriority security interests in and first-priority, valid, perfected, enforceable and unavoidable liens upon PAS Services PLLC's accounts receivable, including any proceeds thereof that are subject to prior valid, perfected, enforceable and unavoidable security interests as of or after the Petition Date (the "**PAS Services' Accounts Receivable**") and all unencumbered assets of the Borrowers as of the date hereof and as may be acquired in the future; (z) a junior perfected security interest in and second-priority, valid, perfected enforceable and unavoidable lien on all of the Debtors' accounts receivable other than the PAS Services' Accounts Receivable, including any proceeds thereof that are subject to prior valid,

perfected, enforceable and unavoidable security interests as of the Funding Date (collectively (y) and (z) shall be hereinafter referred to as the "**DIP Collateral**"); (c) the Debtors' obtaining Court approval of and compliance with the milestones set forth on __Exhibit C__ (collectively, the "**Milestones**"); and (d) funds from Debtors' PAS (x8807), DOC OKC (x6730), and DOCTX3 (x7758) accounts are funds collected from accounts receivables and that while in such accounts, they are segregated from other funds of the Debtors and the Estates.

J.      Business Judgment and Good Faith Pursuant to Section 364(e). ~~Subject to a Final Order, any~~Any credit extended, loans made, and other financial accommodations extended to the Debtors by the DIP Lender, including, without limitation, pursuant to this ~~Interim~~Final Order, have been extended, issued, or made, as the case may be, in "good faith" within the meaning of section 364(e) of the Bankruptcy Code and in express reliance upon the protections offered by Bankruptcy Code section 364(e), and the DIP Facilities, the DIP Liens, and the DIP Superpriority Claims (as defined below) shall be entitled to the full protection of Bankruptcy Code section 364(e) in the event that this ~~Interim~~Final Order or any provision hereof is vacated, reversed, or modified on appeal or otherwise.

K.      Sections 506(c) and 552(b).  As a condition to obtaining financing under the DIP Facility and to use Cash Collateral as set forth in this ~~Interim~~Final Order and as a material inducement to the DIP Lender's agreement to provide the DIP Facility and the Initial DIP Lender's consent to the use of Cash Collateral as set forth in this ~~Interim~~Final Order, and in exchange for (a) the DIP Lender's willingness to provide the DIP Facility to the extent set forth herein, (b) the consensual use of Cash Collateral, subject to the Approved Budget, the terms of the DIP Loan Agreement and the terms of this ~~Interim~~Final Order, the Debtors have agreed that~~, subject to entry of~~ the ~~Final Order, the~~DIP Lender and the Initial DIP Lender are entitled to

9

receive (1) a waiver of any equities of the case exceptions or claims under Bankruptcy Code section 552, and (2) a waiver of the provisions of Bankruptcy Code section 506(c) with respect to the DIP Collateral and the Initial DIP Collateral (defined below).

L.     <u>Good Cause</u>. Good cause has been shown for the entry of this ~~Interim~~Final Order. The relief requested in the Motion is necessary, essential, and appropriate and is in the best interest of and will benefit the Debtors, their creditors, and their Estates, as its implementation will, among other things, provide the Debtors with the necessary liquidity to (a) minimize disruption to the Debtors' business and on-going operations, (b) preserve and maximize the value of the Debtors' Estates for the benefit of all the Debtors' creditors, and (c) avoid immediate and irreparable harm to the Debtors, their creditors, their businesses, their employees, and their assets.   The terms of the DIP Facility are fair and reasonable, reflect the Debtors' exercise of their business judgment, and are supported by reasonably equivalent value and fair consideration.   The DIP Facility is the product of reasonable, arm's length, good faith negotiations between the Debtors and the DIP Lender.

M.     <u>Good Faith</u>. The DIP Lender has acted in good faith, and without negligence or violation of public policy or law, in respect of all actions taken by it in connection with or related in any way to negotiating, implementing, documenting, or obtaining the requisite approvals of the DIP Facility and the use of Cash Collateral, including in respect of the granting of the DIP Liens, any challenges or objections to the DIP Facility or the use of Cash Collateral, and all documents related to any and all transactions contemplated by the foregoing.

N.     <u>The Initial DIP Obligations</u>.   Subject to the Debtors' agreement and the Court's approval to modify the Initial DIP Loan Documents to include as an Event of Default if the Debtors are not in (i) Substantial Compliance[4] with the Budget on a 13-week rolling basis at all

---

[4] "**Substantial Compliance**" is defined as (i) for any cumulative calendar weekly budget period, the aggregate cumulative amount of collections less disbursements shall not be less than eighty-five (85%) of the aggregate

10

times after entry of ~~this~~the Interim Order and (ii) Substantial Compliance with the monthly budgeted cash balance at all times after the entry of ~~this~~the Interim Order, the Initial DIP Lender has consented to the use of his Cash Collateral, the subordination of the Initial DIP Liens to the DIP Liens, in each case as provided in ~~this~~the Interim Order and this Final Order, and the extension of credit to fund the Debtors' critical working capital needs in the form of the DIP Facility.  Subject to the Debtors' agreement and the Court's approval to modify the Initial DIP Loan Documents to include as an Event of Default if the Debtors are not in (i) Substantial Compliance with the Budget on a 13-week rolling basis at all times after entry of ~~this~~the Interim Order and (ii) Substantial Compliance with the monthly budgeted cash balance at all times after the entry of ~~this~~the Interim Order, the Initial DIP Lender has waived any Event of Default under the Initial DIP Loan Documents and Initial DIP Order to the extent that such Event of Default arises from the Debtors' entry into the DIP Loan Documents, entry of ~~this~~the Interim Order and consummation of the transactions contemplated therein and herein. Moreover, in light of the aggregate net availability to the Debtors under the DIP Facility, the availability of the DIP Facility confers a material benefit to the Debtors.

O. <u>Immediate Entry</u>. Sufficient cause exists for immediate entry of this ~~Interim~~Final Order pursuant to Bankruptcy Rule 4001(c)(2).  Any objections that were made (to the extent such objections have not been withdrawn, waived, resolved, or settled) are hereby overruled on the merits.

---

cumulative amount of collections less disbursements shall not be less than eighty-five (85%) of the aggregate amount budgeted and (ii) for any monthly budgeted cash balance, the amount shall not be less than eighty-five (85%) of the monthly budgeted amount.

0
~~4888-9946-8500\3~~4886-4669-6150\3

P.     <u>Debtors' and DIP Lender's Acknowledgments, Agreements, and Stipulations</u>. In requesting the DIP Facility and use of Cash Collateral, and in exchange for and as a material inducement to the DIP Lender to agree to provide the DIP Facility, access to the Cash Collateral, and as a condition to providing financing under the DIP Facility and consenting to the use of Cash Collateral, and in exchange for and as a material inducement to the Initial DIP Lender's agreement to provide access to the Cash Collateral, the Debtors and DIP Lender permanently and irrevocably admit, stipulate, acknowledge, and agree, as follows:

(1)     <u>DIP Loan</u>.  The Debtors have no valid claims (as that term is defined in Bankruptcy Code section 101(5)), challenges, causes of action and/or choses in action against the DIP Lender or any of the DIP Lender's agents, attorneys, advisors, or professionals, including but not limited to with respect to the negotiation of DIP Loan Documents or otherwise, whether arising in law or in equity.

(2)     <u>Indemnity</u>. The DIP Lender has acted in good faith, and without negligence or violation of public policy or law, in respect of all actions taken by it in connection with or related in any way to negotiating, implementing, documenting, or obtaining the requisite approvals for the DIP Facility and the use of Cash Collateral, including in respect of the granting of the DIP Liens, any challenges or objections to the DIP Facility or the use of Cash Collateral, and all documents related to any and all transactions contemplated by the foregoing.  Accordingly, the DIP Lender, solely in its capacity as such under ~~this~~the Interim Order, this Final Order and the Initial DIP Loan Documents and not in any other capacity, shall be and hereby is indemnified and held harmless by the Debtors in respect of any claim or liability incurred in respect thereof or in any way related thereto, *provided* that no such parties will be indemnified for any cost,

expense, or liability to the extent determined in a final, non-appealable judgment of a court of competent jurisdiction to have resulted primarily from such parties' gross negligence or willful misconduct. ~~Subject to entry of the Final Order, no~~No exception or defense exists in contract, law, or equity as to any obligation set forth, as the case may be, in this paragraph or in the DIP Loan Documents, to the Debtors' obligation to indemnify and/or hold harmless the DIP Lender as the case may be.

(3)    <u>Release</u>.  Each of the Debtors and their Estates, on their own behalf and on behalf of each of their past, present and future predecessors, successors, heirs, subsidiaries and assigns have agreed to provide releases to each of the Released Parties (defined below) as provided in this ~~Interim~~<u>Final</u> Order.

(4)    <u>Cash Collateral</u>.  The Debtors admit, stipulate, acknowledge and agree that all of the cash, including, but not limited to, all account receivables, reimbursement checks, rebates, overpayment refunds from vendors, and voided payments from vendors, of the Debtors, wherever located, and all cash equivalents, including any cash in deposit accounts of the Debtors constitute "cash collateral" of the DIP Lender and the Initial DIP Lender within the meaning of Bankruptcy Code section 363 (the "**Cash Collateral**").

(5)    <u>Sale and Credit Bidding</u>. Subject to Bankruptcy Code section 363(k) ~~and entry of the Final Order~~, the Debtors admit, stipulate, acknowledge, and agree that the DIP Lender and Initial DIP Lender shall each have the right to credit bid the entirety of (or any portion of) the DIP Obligations under the DIP Loan Documents (which may be credit bid solely by the DIP Lender), and/or the Initial DIP Obligations under the Initial DIP Loan Documents (which may be credit bid solely by the Initial DIP Lender).

R.     Credit Bid Rights.   ~~Subject to entry of the Final Order, the~~The Debtors acknowledge and agree that they shall not object, or support any objection, to the DIP Lender's and Initial DIP Lender's rights to credit bid up to the full amount of their respective DIP Obligations and Interim DIP Obligations, in each case including, without limitation, any accrued interest, in any sale effectuated through Bankruptcy Code section 363, whether in a chapter 11 or chapter 7 proceeding.

Based upon the foregoing, and upon the record made before the Court at the ~~Interim Hearing~~DIP Hearings, and after due consideration and good cause appearing therefor;

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT:

1.     Motion Granted. The Motion is granted on ~~an interim~~a final basis to the extent provided in this ~~Interim~~Final Order.  Any objections to the entry of this ~~Interim~~Final Order that have not been withdrawn, waived, resolved, or settled, and all reservations of rights included therein, are hereby denied and overruled on the merits.

2.     Authorization. On ~~an interim~~a final basis, the Debtors are hereby authorized and empowered to immediately borrow and incur the DIP Loans, pursuant to the terms and conditions of the DIP Loan Documents, in an aggregate principal amount not to exceed ~~TWO~~FOUR HUNDRED AND FIFTY THOUSAND DOLLARS AND NO CENTS ($~~200,000.00~~450,000.00), with the Initial DIP Loan ~~to be~~having been made upon entry of ~~this~~the Interim Order and satisfaction of other conditions set forth in the DIP Loan Documents, with the remaining DIP Loans to be advanced after entry of ~~the~~this Final Order in accordance with the DIP Loan Documents and consistent with the applicable Approved Budget and the DIP Loan Documents.  The Debtors are hereby authorized to enter into, execute, deliver, and perform all obligations under the DIP Loan Documents.  Except as permitted by this ~~Interim~~Final Order, no

14

obligation, payment, transfer, or grant of security hereunder or under the other DIP Loan Documents shall be stayed, restrained, voidable, avoidable, or recoverable under the Bankruptcy Code or under any applicable state, federal, or foreign law (including, without limitation, under chapter 5 of the Bankruptcy Code or under any applicable state Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act, or similar statute or common law), or be subject to any defense, reduction, setoff, counterclaim, recoupment, offset, recharacterization, subordination (whether equitable, contractual or otherwise), cross-claims, or any other challenge under the Bankruptcy Code or any applicable law, rule, or regulation by any person or entity.

3.     _Evidence of Borrowing Arrangements_.  All terms, conditions, and covenants set forth in the DIP Loan Documents shall be sufficient and conclusive evidence of: (i) the borrowing arrangements by and among the Debtors and the DIP Lender, and (ii) the Debtors' assumption and adoption of, and agreement to comply with, all the terms, conditions, and covenants of this ~~Interim~~Final Order and the other DIP Loan Documents for all purposes, including, without limitation, to the extent applicable, the payment of all DIP Obligations arising thereunder.  Upon effectiveness thereof, the DIP Loan Documents shall evidence the DIP Obligations, which DIP Loan Documents and DIP Obligations shall be valid, binding, and enforceable against the Debtors, their Estates, and any successors thereto, including, without limitation, any trustee appointed in the Chapter 11 Cases or any case under chapter 7 of the Bankruptcy Code upon the conversion of these Chapter 11 Cases (collectively, the "**Successor Cases**"), and their creditors and other parties-in-interest, in each case, in accordance with the terms of this ~~Interim~~Final Order and the other DIP Loan Documents.

4.     _Amendments to DIP Loan Documents_. Subject to the terms and conditions of the applicable DIP Loan Documents, the Debtors and the DIP Lender may make amendments,

modifications, or supplements to any DIP Loan Document, and the DIP Lender may waive any provisions in the DIP Loan Documents, without further approval of the Court; *provided* that any amendments, modifications, or supplements to any DIP Loan Documents that are material (the "**Material DIP Amendment**"), shall be filed with the Court, and the Debtors shall provide prior written notice of the Material DIP Amendment to (i) counsel to the DIP Lender, (ii) counsel to the Interim DIP Lender, (iii) the 20 Largest Unsecured Creditors, (iv) the U.S. Trustee, and (v) the Subchapter V Trustee; *provided* that the consent of the foregoing parties will not be necessary to effectuate any such amendment, modification, or supplement, except that any Material DIP Amendment that is subject to a timely and unresolved objection must be approved by the Court after notice and a hearing.

5.    Indemnification.    ~~Subject to entry of the Final Order, the~~The Debtors are authorized to indemnify and hold harmless the DIP Lender, solely in its capacity as such under this ~~Interim~~Final Order and the DIP Loan Documents and not in any other capacity, and, solely in its capacity as such, each of its respective successors, assigns, partners, representatives, agents, attorneys, advisors, financial advisors, consultants, professionals, managers, past, present and future, and their respective heirs, predecessors, successors and assigns, in accordance with, and subject to, the DIP Loan Documents, *provided* that no such parties will be indemnified for any cost, expense, or liability to the extent determined in a final, non-appealable judgment of a court of competent jurisdiction to have resulted primarily from such parties' gross negligence or willful misconduct, which indemnification is hereby authorized and approved.

6.    DIP Lien Granting.    To secure performance and payment when due (whether at the stated maturity, by acceleration or otherwise) of any and all DIP Obligations of the Debtors to the DIP Lender of whatever kind, nature, or description, whether absolute or contingent, now

existing or hereafter arising, the DIP Lender is hereby granted, effective as of the Petition Date, liens and security interests in the DIP Collateral as follows: (i) superpriority security interests in and first-priority, valid, perfected, enforceable and unavoidable liens upon PAS Services' Accounts Receivable and all unencumbered assets of the Debtors as of the date hereof and as may be acquired in the future; (ii) a junior perfected security interest in and valid, perfected enforceable and unavoidable lien on all of the Debtors' accounts receivable other than the PAS Services' Accounts Receivable, with priority immediately following that of the Initial DIP Lender ( (such security interests and liens, the "**DIP Liens**")..

7.      <u>DIP Lien Priority in DIP Collateral</u>.  Except as provided in this ~~Intermi~~Final Order or the DIP Loan Documents, the DIP Liens on the DIP Collateral securing the DIP Obligations shall be first and senior in priority to all other interests and liens of every kind, nature and description, whether created consensually, by an order of the Court or otherwise, including, without limitation, liens or security interests granted in favor of third parties in conjunction with Bankruptcy Code sections 363, 364, or any other section of the Bankruptcy Code or other applicable law. Except as provided herein, the DIP Liens (i) shall not be made subject to or *pari passu* with (A) any lien, security interest, or claim heretofore or hereinafter granted in these Chapter 11 Cases or any Successor Cases and shall be valid and enforceable against the Debtors, their Estates, any trustee, or any other estate representative appointed or elected in these Chapter 11 Cases or any Successor Cases and/or upon the dismissal of these Chapter 11 Cases or any Successor Cases; (B) any lien that is avoided and preserved for the benefit of the Debtors and their Estates under section 551 of the Bankruptcy Code or otherwise; and (ii) shall not be subject to sections 510, 549, 550, or 551 of the Bankruptcy Code.

8.      <u>Postpetition Lien Perfection</u>.    This ~~Interim~~Final Order shall be sufficient and conclusive evidence of the priority, perfection, and validity of the DIP Liens, and the other security interests granted herein, effective as of the Petition Date, without any further act and without regard to any other federal, state, or local requirements or law requiring notice, filing, registration, recording, or possession of the DIP Collateral, or other act to validate or perfect such security interest or lien, including, without limitation, control agreements with any financial institution(s) party to a control agreement or other depository account consisting of DIP Collateral, or requirement to register liens on any certificates of title (each, a "**Perfection Act**"). Notwithstanding the foregoing, if the DIP Lender, in its sole discretion, elects for any reason to file, record, or otherwise effectuate any Perfection Act, then the DIP Lender is authorized to perform such act, which acts shall be deemed to have been accomplished as of the date of ~~this~~the Interim Order notwithstanding the date and time actually accomplished, and in such event, the subject filing or recording office is authorized to accept, file, or record any document in regard to such act in accordance with applicable law.  The DIP Lender may choose to file, record, or present a certified copy of this ~~Interim~~Final Order in the same manner as a Perfection Act, and, in such event, the subject filing or recording office is authorized to accept, file, or record such certified copy of this ~~Interim~~Final Order in accordance with applicable law.  If the DIP Lender chooses and attempts to file, record, or perform a Perfection Act, no defect or failure in connection with such attempt shall in any way limit, waive or alter the validity, enforceability, attachment, priority, or perfection of the postpetition liens and security interests granted herein by virtue of entry of this ~~Interim~~Final Order.  To the extent that any applicable non-bankruptcy law otherwise would restrict the granting, scope, enforceability, attachment or perfection of any liens and security interests granted and created by this ~~Interim~~Final Order or otherwise would

18

impose filing or registration requirements with respect to such liens and security interests, such law is hereby preempted to the maximum extent permitted by the Bankruptcy Code, applicable federal or foreign law, and the judicial power and authority of this Court; provided, however, that nothing herein shall excuse the Debtors from payment of any local fees, if any, required in connection with such liens.  To the extent the DIP Lender has filed Uniform Commercial Code financing statements or other security or perfection documents under the names of any of the Debtors, such filings shall be deemed to properly perfect its liens and security interests granted and confirmed by this ~~Interim~~Final Order and any DIP Loan Document without further action by the DIP Lender.

9.    <u>DIP Loan Superpriority Claims</u>.  All DIP Obligations now existing or hereafter arising pursuant to this ~~Interim~~Final Order, the DIP Loan Documents, and the DIP Facility are granted an allowed superpriority administrative expense claim against each of the Debtors' Estates, jointly and severally, having priority over all other costs and expenses of the kinds specified in, or ordered pursuant to, sections 105, 326, 328, 330, 331, 503(b), 506(c), 507(a), 507(b), 546(c), 726, 1114 or any other provision of the Bankruptcy Code or otherwise, as set for in Bankruptcy Code section 364(c)(1), which shall be payable from and have recourse to all prepetition and postpetition property of the Debtors and all proceeds thereof (such superpriority administrative expense claims, the "**DIP Superpriority Claims**"); provided, however, that the DIP Superpriroity Claims shall be paid pari passu with the Initial DIP Superpriority Administrative Priority Expense Claim.

10.    <u>Payments to Initial DIP Lender</u>.  Subject to the Approved Budget, the Debtors are authorized and directed to pay to the Initial DIP Lender on the last business day of each calendar

month after entry of ~~this~~the Interim Order, an amount equal to interest, fees and costs accruing that calendar month under the Initial DIP Loan Documents.

11.     <u>Events of Default; DIP Loan Documents</u>. The occurrence of (a) any "Event of Default" as that term is defined in the DIP Loan Documents, (b) the occurrence of the Maturity Date under the DIP Loan Documents, (c) any material violation, breach, or default by the Debtors with respect to any of their obligations under ~~this~~the Interim <u>Order, this Final</u> Order, any other DIP Loan Document, the Initial DIP Order or any Initial DIP Loan Document, shall constitute a "<u>DIP Termination Event</u>" hereunder unless waived in writing by the DIP Lender in accordance with the DIP Loan Documents or successfully challenged following notice of a DIP Termination Event.  Unless the DIP Lender, in its sole discretion, has otherwise consented in writing, it shall also be a DIP Termination Event under the DIP Facility if, prior to the indefeasible payment in full of such DIP Facility, the Debtors (i) obtain postpetition loans or other financial accommodations pursuant to Bankruptcy Code sections 364(c) or 364(d); (ii) propose or support any chapter 11 plan or sale of all or substantially all of the Debtors' assets, or order confirming such plan or approving such sale that is not conditioned upon the indefeasible payment of the DIP Obligations (other than indemnities then due and payable) in full in cash, within a commercially reasonable period of time, and in any event no later than the effective date of such chapter 11 plan or sale, without the written consent of the DIP Lender; (iii) challenge the application of any payments authorized by ~~this~~the Interim Order <u>and this Final Order</u> pursuant to Bankruptcy Code section 506(b); or (iv) propose or support, directly or indirectly, any attempt to limit or prevent the DIP Lender from exercising its credit bid rights in connection with the sale of any assets of the Debtors; provided, that the Debtors' response to any information requests,

diligence, requests for production, or subpoenas by a party in interest shall not constitute "support" of such an attempt.

12.  <u>Events of Default Initial DIP Loan Documents</u>.  In addition to the "Events of Default" under the Initial DIP Loan Documents, it shall be an Event of Default under the Initial DIP Loan Document if the Debtors are not in (i) Substantial Compliance with the Budget on a 13-week rolling basis at all times after entry of ~~this~~<u>the</u> Interim Order and (ii) Substantial Compliance with the monthly budgeted cash balance at all times after the entry of ~~this~~<u>the</u> Interim Order.  All other Events of Default and rights and remedies granted to the Initial DIP Lender with respect to Events of Default in the Initial DIP Order remain unchanged.

13.  <u>Rights and Remedies upon a DIP Termination Event</u>.  ~~During the period covered by this Interim Order, after~~<u>After</u> the later of (x) five (5) business days following the delivery of a written notice of the occurrence of and during the continuance of a DIP Termination Event (the "**Termination Notice Period**"), or (y) resolution of any objection as to whether a DIP Termination Event has occurred or other related request for relief presented to the Court (each, a "**Termination Objection**"), but only if a Termination Objection is filed before expiration of the Termination Notice Period (the "**Remedies Notice Period**"), without further notice, motion or application to, order of, or hearing before this Court, the DIP Lender shall be entitled to independently take any act or exercise any right or remedy as provided in this ~~Interim~~<u>Final</u> Order or any other DIP Loan Document, as applicable, including, without limitation, (a) declare all DIP Obligations owing under the DIP Loan Documents to be immediately due and payable; (b) terminate, reduce, or restrict any commitment to extend additional credit to the Debtors to the extent any such commitment remains; (c) terminate the DIP Facility and any DIP Loan Document as to any future liability or obligation of the DIP Lender, but without affecting any of

the DIP Obligations or the DIP Liens securing the DIP Obligations; (d) terminate and/or revoke the Debtors' right, if any, under this ~~Interim~~Final Order and the other DIP Loan Documents to use any Cash Collateral and all authority to use Cash Collateral shall cease; (e) invoke the right to charge interest at the default rate under the DIP Loan Documents; (f) independently take any act or exercise any right or remedy as provided in this ~~Interim~~Final Order and/or any DIP Loan Document; and/or (g) stop lending.  The DIP Lender shall be entitled to terminate and/or revoke the Debtors' right, if any, under ~~this~~the Interim Order, this Final Order, and the other DIP Loan Documents to use any Cash Collateral and all such authority to use Cash Collateral shall cease. For the avoidance of doubt, notwithstanding the foregoing, during the Remedies Notice Period, the Debtors may use Cash Collateral in amounts that the Debtors have determined in good faith are necessary to the preservation of the Debtors and their Estates solely in accordance with the Approved Budget, or that have otherwise been approved in advance in writing by the DIP Lender.

14.    <u>Modification of Automatic Stay</u>.  The automatic stay provisions of section 362 of the Bankruptcy Code and any other restriction imposed by an order of the Court or applicable law are hereby modified without further notice, application, or order of the Court to the extent necessary to permit the DIP Lender to perform any act authorized or permitted under or by virtue of the DIP Loan Documents, as applicable, including, without limitation, (a) to implement the postpetition financing arrangements authorized by ~~this~~the Interim Order and this Final Order, (b) to take any act to create, validate, evidence, attach or perfect any lien, security interest, right or claim in the DIP Collateral, (c) to assess, charge, collect, advance, deduct and receive payments with respect to the DIP Obligations (or any portion thereof), including, without limitation, all interests, fees, costs, and expenses permitted under any of the DIP Loan Documents, and (d)

subject to the Remedies Notice Period, to take any action and exercise all rights and remedies provided to them by ~~this~~the Interim Order, this Final Order, the other DIP Loan Documents, or applicable law.

15.   <u>Debtors' Stipulations Binding</u>.   The stipulations, releases, agreements, and admissions contained in this ~~Interim~~Final Order (the "**Debtors' Stipulations**"), shall be binding on the Debtors in all circumstances.   The Debtors' Stipulations shall be binding on each other party in interest, including, without limitation, any subsequent trustee (including a chapter 7 trustee).

16.   <u>No Unauthorized Disposition of Collateral; Use of Cash Collateral.</u>   Subject to further order of the Court, the Debtors shall not sell, transfer, encumber, use, or otherwise dispose of any portion of the DIP Collateral other than (x) in the ordinary course of business and (y) pursuant to the terms of ~~this~~the Interim Order, this Final Order, or otherwise permitted by the DIP Loan Documents, and the Debtors are authorized to use Cash Collateral solely in a manner consistent with ~~this~~the Interim Order, this Final Order, the Approved Budget and the DIP Loan Documents (including permitted variances and exclusions to the Approved Budget permitted thereunder).   Notwithstanding anything in this ~~Interim~~Final Order to the contrary, no portion of the proceeds of the DIP Facility, the DIP Collateral, the Initial DIP Collateral, or Cash Collateral, and no disbursements set forth in the Approved Budget shall be used for the payment of professional fees, disbursements, costs or expenses incurred in connection with: (a) objecting, contesting or raising any defense to the validity, perfection, priority, or enforceability of, or any amount due under, the DIP Loan Documents or any security interests, liens or claims granted under ~~this~~the Interim Order, this Final Order or the DIP Loan Documents to secure such amounts; (b) asserting any challenges, claims, actions or causes of action against the DIP

Lender, in its capacity as such, or any of its respective agents, representatives, attorneys, or advisors; (c) preventing, hindering or otherwise delaying enforcement or realization on the DIP Collateral; (d) seeking to amend or modify any of the rights granted to the DIP Lender under ~~this~~the Interim Order, this FInal or the DIP Loan Documents, including seeking to use Cash Collateral and/or DIP Collateral on a contested basis; or (e) contesting the DIP Liens or DIP Loan Documents or the DIP Lender's right to credit bid.

17.    <u>No Waiver</u>.  The failure of the DIP Lender to seek relief or otherwise exercise its rights and remedies under the DIP Loan Documents, the DIP Facility, or this ~~Interim~~Final Order, as applicable, shall not constitute a waiver of the DIP Lender's rights hereunder, thereunder, or otherwise.  Notwithstanding anything herein, the entry of this ~~Interim~~Final Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, or otherwise to impair the rights of the DIP Lender under the Bankruptcy Code or under non-bankruptcy law, including, without limitation, the rights of the DIP Lender to: (a) request conversion of the Chapter 11 Cases, dismissal of the Chapter 11 Cases, or the appointment of a trustee in the Chapter 11 Cases; (b) propose, subject to the provisions of Bankruptcy Code section 1121, a plan; or (c) exercise any of the rights, claims, or privileges (whether legal, equitable, or otherwise) of the DIP Lender.

18.    <u>No Modification or Stay of this ~~Interim~~Final Order</u>. The DIP Lender has acted in good faith in connection with the DIP Facility and with this ~~Interim~~Final Order, and its reliance on ~~this~~the Interim <u>Order and this Final</u> Order is in good faith, and the DIP Lender is entitled to the protections of section 364(e) of the Bankruptcy Code.

19.    <u>Rights of Access and Information</u>. The Debtors shall provide the DIP Lender reasonable access and information as requested by the DIP Lender.

24

20.    <u>Binding Effect</u>. All of the provisions of this ~~Interim~~Final Order and the other DIP Loan Documents, the DIP Obligations (which shall constitute allowed claims in accordance with section 506(a) of the Bankruptcy Code for all purposes in these Chapter 11 Cases and any subsequent chapter 7 case(s)), all liens, and claims granted hereunder in favor of the DIP Lender, and any and all rights, remedies, privileges, immunities and benefits in favor of the DIP Lender set forth herein, including, without limitation, the parties' acknowledgements, stipulations, and agreements in Section D of this ~~Interim~~Final Order (without each of which the DIP Lender would not have entered into or provided funds under the DIP Loan Documents provided or acknowledged in this ~~Interim~~Final Order), and any actions taken pursuant thereto, shall be effective and enforceable as of the Petition Date immediately upon entry of this ~~Interim~~Final Order and not subject to any stay of execution or effectiveness (all of which are hereby waived), notwithstanding Bankruptcy Rules 4001(a)(3), 6004(h), 6006(d), 7062, and 9024, or any other Bankruptcy Rule, or Rule 62(a) of the Federal Rules of Civil Procedure, shall continue in full force and effect, and shall survive entry of any other order or action, including, without limitation, any order which may be entered confirming any chapter 11 plan providing for the refinancing, repayment, or replacement of the DIP Obligations, converting the Chapter 11 Cases to any other chapter under the Bankruptcy Code, dismissing the Chapter 11 Cases, approving any sale of any or all of the DIP Collateral, or vacating, terminating, reconsidering, revoking, or otherwise modifying this ~~Interim~~Final Order or any provision hereof~~; *provided* that in the event a Final Order is entered, the terms and conditions of such Final Order shall control over this Interim Order; *provided, further*, that such Final Order must affirm each of the provisions, protections, grants, statements, stipulations, and agreements in this Interim Order in order for~~

~~such provisions, protections, grants, statements, stipulations, and agreements to remain in effect after entry of the Final Order.~~.

21.    <u>Discharge</u>.  The DIP Obligations hereunder shall not be discharged by the entry of an order confirming any plan of reorganization in any of these Chapter 11 Cases, notwithstanding the provisions of Bankruptcy Code section 1141(d), unless such obligations have been indefeasibly paid in full in cash on or before the effective date of such confirmed plan of reorganization or the DIP has agreed otherwise in writing.

22.    <u>Effectiveness of ~~Interim~~<u>Final</u> Order</u>.  Except as set forth in this ~~Interim~~<u>Final</u> Order, in the event the Court modifies, reverses, vacates, or stays any of the provisions of this ~~Interim~~<u>Final</u> Order or any of the other DIP Loan Documents ~~following a Final Hearing~~, such modifications, reversals, vacatur, or stays shall not affect the (i) validity, priority, or enforceability of any DIP Obligations incurred prior to the actual receipt of written notice by the DIP Lender, of the effective date of such modification, reversal, vacatur, or stay, (ii) validity, priority, or enforceability of the DIP Liens or the DIP Superpriority Claims, or (iii) rights or priorities of the DIP Lender pursuant to ~~this~~<u>the</u> Interim Order <u>and this Final Order</u> with respect to the DIP Collateral or any portion of the DIP Obligations.

23.    <u>No Marshaling/Application of Proceeds</u>.  ~~Subject to entry of a Final Order, in~~<u>In</u> no event shall the DIP Lender be subject to the equitable doctrine of "marshaling" or any similar doctrine with respect to the DIP Collateral, and all proceeds shall be received and applied in accordance with the DIP Loan Documents.

24.    <u>Payment of DIP Lender Fees and Expenses</u>.  The Debtors shall pay (i) the reasonable and documented fees and expenses reimbursable under the DIP Loan Documents whether incurred before or after the Petition Date and (ii) all reasonable and documented

out-of-pocket costs and expenses of the DIP Lender incurred in his capacity as DIP Lender including, without limitation, reasonable and documented fees and disbursements of counsel in connection with the enforcement or preservation of any rights under the DIP Facility or DIP Loan Documents (collectively, the "**DIP Fees and Expenses**").  Upon entry of this ~~Interim~~Final Order, the Debtors shall immediately pay, and the DIP Lender is hereby authorized to immediately make an advance under the DIP Loan Documents to immediately pay, all accrued and unpaid DIP Fees and Expenses incurred prepetition.

25.    <u>DIP Lender Fees/Expenses</u>. With respect to DIP Fees and Expenses incurred postpetition, professionals for the DIP Lender shall deliver an invoice in summary form with sufficient information to determine the reasonableness of DIP Fees and Expenses (but which shall not be required to include time entry detail and may be redacted for privileged information) to the Debtors, the U.S. Trustee, and the Subchapter V Trustee, with a copy of such invoices delivered simultaneously to the DIP Lender.  If no written objection is received by 12:00 p.m., prevailing Eastern Time, on the date that is ten (10) business days after delivery of such invoice to the Debtors, the U.S. Trustee, and the Subchapter V Trustee, the Debtors shall promptly pay, and the DIP Lender is hereby authorized to make an advance under the DIP Loan Documents to timely pay, such DIP Fees and Expenses.  If an objection to a professional's invoice is timely received, the Debtors shall promptly pay, and the DIP Lender is authorized to make an advance under the DIP Loan Documents to timely pay, the undisputed amount of the invoice, and this Court shall have jurisdiction to determine the disputed portion of such invoice if the parties are unable to resolve the dispute consensually.  Under no circumstances shall professionals for the DIP Lender be required to comply with the U.S. Trustee fee guidelines or otherwise be required to file a fee or retention application with the Court.

26.    <u>Release</u>. ~~Subject to entry of the Final Order, the~~The Debtors and their Estates on their own behalf and on behalf of each of their past, present and future predecessors, successors, heirs, and assigns, hereby forever, unconditionally, permanently, and irrevocably release, discharge, and acquit the DIP Lender, in its capacity as such, and each of its respective successors, assigns, partners, representatives, agents, attorneys, advisors, financial advisors, consultants, professionals, and managers, past, present and future, and their respective heirs, predecessors, successors and assigns (collectively, the "**Released Parties**") of and from any and all claims, controversies, disputes, liabilities, obligations, demands, damages, expenses (including, without limitation, attorneys' fees), debts, liens, actions, and causes of action of any and every nature whatsoever, whether arising in law or otherwise, and whether known or unknown, matured or contingent, including, without limitation, (a) any so-called "lender liability" or equitable subordination claims or defenses, (b) any and all "claims" (as defined in the Bankruptcy Code) and causes of action arising under the Bankruptcy Code, and (c) any and all offsets, defenses, claims, counterclaims, set off rights, objections, challenges, causes of action, and/or choses in action of any kind or nature whatsoever, whether arising at law or in equity, including any recharacterization, recoupment, subordination, avoidance, or other claim or cause of action arising under or pursuant to section 105 or chapter 5 of the Bankruptcy Code or under any other similar provisions of applicable state, federal, or foreign law, including, without limitation, any right to assert any disgorgement or recovery, in each case, with respect to the extent, amount, validity, enforceability, priority, security, and perfection of any of the DIP Obligations, the DIP Loan Documents, or the DIP Liens, and further waive and release any defense, right of counterclaim, right of setoff, or deduction to the payment of the DIP Obligations that the Debtors now have or may claim to have against the Released Parties, arising

under, in connection with, based upon, or related to any and all acts, omissions, conduct undertaken, or events occurring prior to entry of the~~the~~this Final Order.

27.    Texas Tax Liens. Notwithstanding any other provisions in the Motion, the Interim Order, or this Final Order, any statutory liens on account of ad valorem taxes held by the Texas Property Taxing Authorities[5] (the "Texas Tax Liens") shall neither be primed by nor made subordinate to any liens granted to any party hereby to the extent the Texas Tax Liens are valid, perfected, and non-avoidable and, under applicable non-bankruptcy law, are granted priority over a prior perfected security interest or lien. All parties' rights to object to the priority, validity, amount, and extent of the claims (the "Texas Tax Claims") and Texas Tax Liens are fully preserved.

28.    Medport Billing, LLC and MSC Holding, LLC. For the avoidance of doubt, nothing in the Interim Order or this Final Order shall grant the DIP Lender a lien, security interest, or any other interest in accounts receivable Medport Billing, LLC or MSC Holding, LLC (as successor to Synedocare LLC) previously purchased from PAS Services PLLC pursuant to the Master Purchase Agreement, dated August 11, 2021, or those certain Syndeocare Receivables Factoring Master Agreements dated as of March 14, 2018 and June 11, 2019.

29.    ~~27.~~ Survival. To the extent permissible under applicable law, the provisions of this ~~Interim~~Final Order, the validity, priority, and enforceability of the DIP Liens, the DIP Superpriority Claims, and any actions taken pursuant hereto shall survive entry of any order that may be entered (a) confirming any plan of reorganization in this Chapter 11 Cases, (b) converting these Chapter 11 Cases to cases under chapter 7 of the Bankruptcy Code, (c)

---

[5] For purposes of this Final Order, "Texas Property Taxing Authorities" is defined as:  The County of Denton, Texas and The County of Williamson, Texas (represented by McCreary, Veselka, Bragg & Allen, PC); Frisco ISD and Plano ISD (represented by Perdue Brandon Fielder Collins & Mott LLP); City of Carrollton, Dallas County, City of Frisco, Irving ISD, and Tarrant County (represented by Linebarger Goggan Blair & Sampson, LLP).

dismissing these Chapter 11 Cases, (d) approving the sale of any DIP Collateral pursuant to Bankruptcy Code section 363(b) (except to the extent permitted by the DIP Loan Documents), or (e) pursuant to which the Court abstains from hearing these Chapter 11 Cases, and the Debtors shall not seek to modify, impair or discharge this ~~Interim~~Final Order. The terms and provisions of this ~~Interim~~Final Order, including the claims, liens, security interests, and other protections (as applicable) granted to the DIP Lender, shall continue in these Chapter 11 Cases, following dismissal of these Chapter 11 Cases or any Successor Cases, and shall maintain their priority as provided by this ~~Interim~~Final Order until in respect of the DIP Facility, all of the DIP Obligations, pursuant to the DIP Loan Documents (including this ~~Interim~~Final Order), have been indefeasibly paid in full in cash (such payment being without prejudice to any terms of provisions contained in the DIP Facility which survive such discharge by its terms) and all commitments to extend credit under the DIP Facility are terminated or the DIP Lender has otherwise agreed in writing and such alternate treatment has been consummated.

30. ~~28.~~ <u>Proofs of Claim</u>.  The DIP Lender shall not be required to file proofs of claim or proof of administrative claims in any of these Chapter 11 Cases or any Successor Cases under any chapter of the Bankruptcy Code, and the Debtors' Stipulations in this ~~Interim~~Final Order shall be deemed to constitute the timely filed proof of claim and proof of administrative claims against the applicable Debtor(s).

31. ~~29.~~ <u>No Third Party Rights</u>.  Except as specifically provided for herein, this ~~Interim~~Final Order does not create any rights for the benefit of any third party, creditor, equity holders, or any direct, indirect, or incidental beneficiary.

32. ~~30.~~ <u>No Avoidance</u>.  No obligations incurred or payments or other transfers made by or on behalf of the Debtors on account of the DIP Facility shall be avoidable or recoverable

from the DIP Lender under any section of the Bankruptcy Code or any other federal, state, or other applicable law.

33.    ~~31.~~ Reliance.   All post-petition advances under the DIP Loan Documents are made in reliance on this ~~Interim~~Final Order.

34.    ~~32.~~ Payments Free and Clear.  Any and all payments or proceeds remitted to the DIP Lender, pursuant to the provisions of this ~~Interim~~Final Order, any subsequent order of the Court or the DIP Loan Documents, shall, subject to the terms of this Paragraph, be irrevocable, received free and clear of any claims, charge, assessment or other liability, including, without limitation, any such claim or charge arising out of or based on, directly or indirectly, Bankruptcy Code sections 506(c) or 552(b), whether asserted or assessed by, through or on behalf of the Debtors.

35.    ~~33.~~ Limited Effect. In the event of a conflict between the terms and provisions of any of the DIP Loan Documents (including this ~~Interim~~Final Order), the terms and provisions of this ~~Interim~~Final Order shall govern.

36.    ~~34.~~ Headings. Section headings used herein are for convenience only and are not to affect the construction of or to be taken into consideration in interpreting this ~~Interim~~Final Order.

37.    ~~35.~~ Bankruptcy Rules Satisfied. The requirements of Bankruptcy Rules 4001, 6003, and 6004, in each case to the extent applicable, are satisfied by the contents of the Motion.

38.    ~~36.~~ General Authorization.  The Debtors and the DIP Lender are authorized to take any and all actions necessary to effectuate the relief granted in this ~~Interim~~Final Order.

39.    ~~37.~~ Retention of Jurisdiction.  This Court shall retain jurisdiction and power with respect to all matters arising from or related to the implementation or interpretation of this ~~Interim~~Final Order and the other DIP Loan Documents.

~~38.    Final Hearing and Response Dates.  A final hearing on the Motion pursuant to Bankruptcy Rule 4001(c)(2) will be held on **August 13, 2024, at 10 a.m.** prevailing Eastern Time. The Debtors shall mail copies of this Interim Order to the Notice Parties within 48 hours of the entry of this Interim Order, and to any other party that has filed a request for notices with this Court.  Any party in interest objecting to the relief sought at the further interim hearing shall serve and file written objections by **August 6, 2024 at 4:00 p.m.** (ET), which objections shall be served upon (i) the Debtors, Pioneer Health Systems LLC, 3300 Dallas Parkway, Suite 200, Plano, TX 75093 Attn: Colin Chenault; (ii) counsel to the Debtors, Dorsey & Whitney (Delaware) LLP, 300 Delaware Avenue, Suite 1010, Wilmington, DE 19801 Attn: Alessandra Glorioso (glorioso.alessandra@dorsey.com); (iii) counsel to the DIP Lender, Womble Bond Dickinson (US) LLP, 1313 North Market Street, Suite 1200, Wilmington, DE 19801 Attn: Morgan L. Patterson, Esq. (morgan.patterson@wbd-us.com); (iv) counsel to the Initial DIP Lender, Bayard, P.A., 600 N. King Street, Suite 400, Wilmington, DE 19801 Attn: Ericka F. Johnson, Esq. (ejohnson@bayardlaw.com); (v) Subchapter V Trustee, David M. Klauder, Esq. (dklauder@bk-legal.com); and (vi) Office of the United States Trustee, 844 King Street, Suite 2207, Lockbox 35, Wilmington, DE 19801, Attn: Linda J. Casey (linda.casey@usdoj.gov).~~

0
~~4888-9946-8500\3~~4886-4669-6150\3

# **EXHIBIT A**

Credit Agreement

# **EXHIBIT B**

Initial Budget

# EXHIBIT C

Milestones

| | |
|---|---|
| Entry of Interim DIP Order acceptable to DIP Lender | August 12, 2024 |
| Entry of Final DIP Order acceptable to DIP Lender | September 16, 2024 |
| Confirmation of a plan of reorganization including a comprehensive sale process | September 30, 2024 |
| Bid deadline set | January 1, 2025 |
| Closing of a sale of substantially all of the Borrowers' assets or effective date of a confirmed plan of reorganization acceptable to the DIP Lender | February 15, 2025 |

| Summary report: Litera Compare for Word 11.6.0.100 Document comparison done on 8/9/2024 5:20:22 PM | |
|---|---|
| **Style name:** DW Default | |
| **Intelligent Table Comparison:** Active | |
| **Original filename:** Pioneer Health - Motion for Postpetition Financing (Post-Confirmation Sale) - Ex. A (Interim DIP Order)-v3.docx | |
| **Modified DMS:** nd://4886-4669-6150/3/Pioneer Health - Proposed Final DIP Order [Term Note].docx | |
| **Changes:** | |
| Add | 173 |
| Delete | 155 |
| Move From | 0 |
| Move To | 0 |
| Table Insert | 0 |
| Table Delete | 0 |
| Table moves to | 0 |
| Table moves from | 0 |
| Embedded Graphics (Visio, ChemDraw, Images etc.) | 0 |
| Embedded Excel | 0 |
| Format changes | 0 |
| **Total Changes:** | 328 |